# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-IA-01437-SCT

*CLARK SAND COMPANY, INC., CLEMCO INDUSTRIES
CORPORATION, PANGBORN CORPORATION, P. K.
LINDSAY COMPANY, SOUTHERN SILICA OF LOUISIANA,
INC., MISSISSIPPI VALLEY SILICA COMPANY, INC., AND
PULMOSAN SAFETY EQUIPMENT CORPORATION*

*v.*

*RUBY C. KELLY a/k/a RUBY KELLEY,
EXECUTRIX OF THE ESTATE OF DAVID C.
BOZEMAN, DECEASED AND ON BEHALF OF
ALL WRONGFUL DEATH BENEFICIARIES OF
DAVID C. BOZEMAN, DECEASED*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 08/11/2008 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK, JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | FRED KRUTZ, III |
| | EDWIN S. GAULT, JR. |
| | JENNIFER J. SKIPPER |
| | CLYDE L. NICHOLS, III |
| | BLAYNE T. INGRAM |
| ATTORNEYS FOR APPELLEES: | R. ALLEN SMITH, JR. |
| | DAVID NEIL McCARTY |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART AND REMANDED - 04/28/2011 |
| MOTION FOR REHEARING FILED: | 03/11/2010 |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing filed by the appellee is granted. The previous opinions are withdrawn, and these opinions are substituted therefor.

¶2. The Warren County Circuit Court denied defendant Clark Sand's motion for summary judgment, finding that the plaintiff, Ruby C. Kelley, had standing to bring this wrongful-death action, either as the decedent's personal representative or as an interested party, and that the suit was brought within the applicable statute of limitations. With this Court's permission, *see* Mississippi Rule of Appellate Procedure 5, Clark Sand brought this interlocutory appeal to review that decision. We reverse the trial court's denial of summary judgment with respect to the "survival-type" claims included in Kelley's wrongful-death action, as those claims are time-barred. We also reverse the trial court's factual findings on the issue of Kelley's standing. But we affirm the trial court's denial of summary judgment insofar as Kelley has presented a genuine issue of material fact regarding whether she was the decedent's common-law wife at the time of his death, and we remand for trial, during which the fact-finder must decide this question.

### FACTS AND PROCEDURAL HISTORY

¶3. David T. Bozeman[1] worked with silica and silica products throughout his entire working life, but his last exposure to silica was sometime in 1994. On June 2, 2002, Bozeman was diagnosed with lung cancer caused by silicosis. On September 23, 2002, Bozeman joined with fifty-four other plaintiffs in a mass-tort, personal-injury suit against various silica manufacturers and distributors, including Clark Sand Company, styled ***Danny***

---

[1] Bozeman's will and death certificate give Bozeman's middle initial as "T." Apparently, Kelley's complaint is incorrectly styled, giving "C" as his middle initial.

***McBride, et al. v. Pulmosan Safety Equipment Corporation, et al.*** The ***McBride*** complaint included claims for all the plaintiffs' personal injuries, but it also included wrongful-death claims for those plaintiffs who had died from silicosis in favor of their purported beneficiaries. ***McBride*** was filed in the Circuit Court of Holmes County, Mississippi.

¶4. Bozeman, an Alabama resident, died on March 11, 2005, while ***McBride*** was pending. Ruby C. Kelley, Bozeman's live-in girlfriend and fellow Alabamian, was listed as the "informant" on Bozeman's death certificate. The certificate gave Bozeman's marital status as "widowed," and the space for "surviving spouse" was left blank. Kelley was named executrix in Bozeman's will, which bequeathed all of Bozeman's property to her except his pick-up truck. Bozeman also was survived by two sons, one of whom was mentioned in his will.[2] After Bozeman's death, Kelley did not amend the complaint regarding Bozeman's ***McBride*** claim or move the trial court to substitute her as the real party in interest.

¶5. On March 10, 2006, ***McBride*** was dismissed without prejudice pursuant to this Court's decision in ***Canadian National v. Smith***, 926 So. 2d 839 (Miss. 2006). ***Smith*** held that all claims previously filed en masse for silicosis damages that were not filed in the proper venue should be severed as misjoined pursuant to ***Janssen Pharmaceutica v. Armond***, 866 So. 2d 1092 (Miss. 2004), which requires each claim joined in a single lawsuit to arise from a "distinct, litigable event." ***Smith***, 926 So. 2d at 845 (citing ***Armond***, 866 So. 2d at 1099). The ***Smith*** Court stated that such a dismissal would be "as to a matter of form,"

---

[2] These sons are identified in the parties' pleadings and other documents as David Clarke Bozeman and Joey Bozeman.

3

for purposes of the saving statute, Mississippi Code Section 15-1-69.  *Smith*, 926 So. 2d at 845.[3]

¶6.    Kelley filed the instant action on March 5, 2007, in the Circuit Court of Warren County, Mississippi.  Her complaint was styled "***Ruby C. Kelley, Executrix of the Estate of David C. Bozeman, Deceased and on behalf of all Wrongful Death Beneficiaries of David C. Bozeman, Deceased v. Clark Sand Co., Inc., et al***."  Kelley specifically averred in her complaint that this suit is merely a continuation of Bozeman's previous *McBride* claim, which the saving statute allowed her to bring within one year after the dismissal of *McBride* pursuant to *Smith*.  The complaint included claims for Bozeman's personal injuries caused by exposure to silica and for his wrongful death, and Kelley specifically sought "All Wrongful Death Damages and Survival Damages" in connection with Bozeman's death.

¶7.    Clark Sand answered the complaint, asserting various affirmative defenses.  Specifically, Clark Sand argued that the court lacked subject-matter jurisdiction over the cause and that the applicable statute of limitations barred Kelley's suit.  Clark Sand moved for summary judgment on July 2, 2007, arguing that Kelley's suit was time-barred because she had missed the deadline under the survival saving statute found in Mississippi Code Section 15-1-55.  Clark Sand also argued that, at the time she filed suit, Kelley lacked standing to bring the suit because she had not yet been formally appointed executrix of Bozeman's estate and she was not Bozeman's wife.

---

[3] The saving statute allows a plaintiff whose claim is dismissed for a "matter of form" one year to refile his or her claim in an appropriate venue of his or her choice.  *See* Miss. Code Ann. § 15-1-69 (Rev. 2003).

4

¶8. On July 20, 2007, Kelley responded to Clark Sand's summary-judgment motion. She argued first that she had standing as Bozeman's personal representative to initiate the wrongful-death action because she was named executrix in Bozeman's will. Kelley also contended that she and Bozeman had maintained a common-law marriage because they had held themselves out as husband and wife and had cohabitated for six years. Finally, Kelley argued that the statute of limitations had not run because the limitation period was tolled either by the saving statute or by the pendency of *McBride*. Kelley was formally appointed executrix of Bozeman's estate on August 7, 2007, when she was issued letters testamentary by the Probate Court of Choctaw County, Alabama.

¶9. Clark Sand moved again for summary judgment on June 18, 2008, arguing that Kelley's action was untimely filed. Specifically, Clark Sand argued that Kelly was not entitled to the benefits of the saving statute because the parties and claims asserted in her complaint were different from those in *McBride*, and Kelley had thus failed to meet the requirements of the statute.

¶10. By order dated August 11, 2008, the circuit court denied both of Clark Sand's motions. The circuit court found that, by virtue of Bozeman's will, Kelley "could be considered [his] personal representative . . . but if not, she certainly would be an interested party . . . ." So the circuit court held that Kelley had standing either as Bozeman's personal representative or as an interested party, and that Kelley's suit was filed within the applicable statute of limitations because of the saving statute's one-year tolling effect following the dismissal of *McBride*.

¶11.     On August 22, 2008, Clark Sand petitioned this Court for interlocutory appeal, asserting two issues. They are:

I.     Does a decedent's girlfriend – without court approval or authorization – have standing to file an action under the survival statute and/or the wrongful-death statute?

II.     Does the provision in Mississippi's saving statute allowing one year to refile apply to a second suit which differs from the original in both the identity of parties and the identity of claims?

On August 28, 2008, Kelley sought a declaration from an Alabama circuit court that she was Bozeman's common-law wife. On September 18, 2008, we granted Clark Sand's petition for interlocutory appeal. On October 23, 2008, the Alabama court found that Kelley and Bozeman had maintained a common-law marriage at the time of his death. But on February 10, 2009, the Alabama court vacated and set aside the common-law-marriage decree.

## STANDARD OF REVIEW

¶12.     Standing is a question of law reviewed under a de novo standard. *Kirk v. Pope*, 973 So. 2d 981, 986 (Miss. 2007) (citing *City of Picayune v. S. Reg'l Corp.*, 916 So. 2d 510, 519 (Miss. 2005); *Brown v. Miss. Dep't of Human Servs.*, 806 So. 2d 1004, 1005-06 (Miss. 2000)). This Court also reviews a trial court's grant or denial of a motion for summary judgment under a de novo standard. *Monsanto v. Hall*, 912 So. 2d 134, 136 (Miss. 2005).

## DISCUSSION

¶13.     Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). In this case, the legal question of Kelley's standing to file suit under

6

the wrongful-death statute is contingent upon several factual questions. We analyze Clark Sand's motion for summary judgment with respect to these factual questions.

**I.    Kelley presented a genuine issue of material fact to overcome summary judgment.**

¶14.    The United States Supreme Court has stated that standing is "an indispensable part of the plaintiff's case," and that "the irreducible constitutional minimum of standing contains three elements."

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized [and] (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351, 357 (1992) (internal citations omitted). Standing "'is to be determined *as of* the commencement of suit.'" *Delta Health Group, Inc. v. Estate of Pope*, 995 So. 2d 123, 126 (Miss. 2008) (quoting *Lujan*, 504 U.S. at 571).

¶15.    Standing to file a wrongful-death action in Mississippi is determined by reference to the wrongful-death statute, which expressly lists the potential claimants who may commence such an action. Miss. Code Ann. § 11-7-13 (Rev. 2004). Pursuant to Section 11-7-13, a wrongful-death action may be brought: "(1) by the *personal representative* on behalf of the estate and all other persons entitled to recover; (2) by one of the *wrongful death beneficiaries*

7

[hereinafter "*listed relatives*"][4] on behalf of all persons entitled to recover; or (3) by "all interested parties . . . ." ***Long v. McKinney***, 897 So. 2d 160, 168 (Miss. 2004) (quoting Miss. Code Ann. § 11-7-13).

> A.    *Kelley could not have had standing as Bozeman's personal representative at the time she filed suit.*

¶16.    The first potential wrongful-death claimant is "the personal representative of the deceased person." Miss. Code Ann. § 11-7-13 (Rev. 2004). "Personal representative" is defined as "[a] person who manages the legal affairs of another because of incapacity or death" and when it is used by a testator, the term refers to an executor or administrator of the estate. *Black's Law Dictionary* 1045 (abr. 7th ed. 2000). *See also **Hill v. James***, 252 Miss. at 507-508, 175 So. 2d at 179 (finding terms "personal representative" and "legal representative" to be synonymous, defined simply as "executors and administrators of persons deceased").

¶17.    To have standing as a personal representative to bring a wrongful-death action, the plaintiff must be formally appointed as such prior to filing the complaint for wrongful death. ***Long***, 897 So. 2d at 174 (stating that if litigants wish to pursue a claim on behalf of the estate

---

[4] The "wrongful death beneficiaries" enumerated in the statute are the decedent's immediate family members, *i.e.*, "the widow, husband, child, father, mother, sister [and] brother of the deceased." Miss. Code Ann. § 11-7-13 (Rev. 2004). These family members are known to the bench and bar by the term of art "statutory wrongful-death beneficiaries." But the wrongful-death action can be brought by persons other than a family member, namely the decedent's personal representative or an interested party, who also may "benefit" from recovering damages from the wrongful-death suit. So for the sake of clarity, we will not use the term "beneficiaries" to describe these relatives, since any potential wrongful-death claimant technically could be considered a "beneficiary." Instead, we will refer to these family members as "listed relatives."

8

of the deceased, "such estate, of course, be opened and administered through the chancery court."). If the potential claimant has not been formally appointed administrator or executor of the decedent's estate at the time he or she commences the wrongful-death action, it follows that the person is without standing as a personal representative to bring the suit. ***Id.***; *see also* ***Pope***, 995 So. 2d at 126 (holding that decedent's great-nephew did not cure lack of standing by subsequently being appointed administrator of decedent's estate).

¶18.   It is undisputed that, at the time she filed the suit, Kelley had not yet been formally appointed executrix of Bozeman's estate, as the Alabama probate court had not yet issued her letters testamentary. So Kelley could not have had standing as Bozeman's personal representative to bring this action at that time. ***Long***, 897 So. 2d at 174.

¶19.   Her being named executrix in Bozeman's will does not change this. Until it was probated, Bozeman's will conferred no legal authority upon Kelley. *Cf.* Miss. Code Ann. § 91-7-41 (Rev. 2004); Robert A. Weems, *Wills and Administration of Estates in Mississippi* 160 (3d. ed. 2003) ("[i]n order to be legally effective, a will must be probated."). An unprobated will "is nothing more than a piece of paper with writing on it," and it "cannot be relied on to determine the ownership of property because it is not effective as an instrument of title . . . ." ***Id.***[5] Kelley thus had no authority to bring a wrongful-death claim on behalf of the estate until she was formally appointed executrix thereof. ***Long***, 897 So. 2d at 174.[6]

---

[5] The validity of a will, furthermore, is often contested, *e.g.*, ***Estate of Griffith v. Griffith***, 30 So. 3d 1190 (Miss. 2010), making probate all the more important.

[6] Under Alabama law (the state in which Bozeman's will was probated), "a probate 'estate' does not come into existence until a proceeding to administer the same is filed in the appropriate probate court[.]" Until such time, the estate "has no legal existence, and no lawsuit can be filed on its behalf by the decedent's personal representative." ***In re Eldridge***,

9

Since "standing is to be determined as of the commencement of suit," and Kelley was not appointed executrix until after she had commenced this action, Kelley could not have had standing as a personal representative to commence this wrongful-death action when she did. *Pope*, 995 So. 2d 123.

B. *Kelley may have standing as one of Bozeman's "listed relatives."*

¶20. Throughout the proceedings below and in her appellate brief, Kelley refers to herself as Bozeman's widow, and she argues that she had standing as such to bring this suit. The decedent's "widow" is one of the "listed relatives" in the wrongful-death statute who may bring a wrongful-death action. Miss. Code Ann. § 11-7-13 (Rev. 2004). So if Kelley was in fact Bozeman's common-law wife at the time of his death, she would qualify as his "widow," and she would have had standing to file this action as a "listed relative" under the express terms of the wrongful-death statute.

¶21. Although Mississippi law does not provide for common-law marriage, this state gives full faith and credit to a valid common-law marriage from another state. *George v. George*, 389 So. 2d 1389, 1390 (Miss. 1980) (citing Miss. Code Ann. § 93-1-15 (1972); *Walker v. Matthews*, 191 Miss. 489, 3 So. 2d 820 (1941)). Kelley did procure an order from an Alabama circuit court finding that she and Bozeman had maintained a common-law marriage. But Kelley sought this decree only after Bozeman's death and after Clark Sand had petitioned this Court for interlocutory appeal. And the common-law-marriage decree was later vacated by the Alabama court. So the factual question regarding whether Kelley

348 B.R. 834, 845-46 (Bankr. N.D. Ala. 2006) (citing *Jones v. Blanton*, 644 So. 2d 882, 887 (Ala. 1994)).

10

and Bozeman maintained a common-law marriage at the time of his death is yet to be decided in Alabama.[7]

¶22.   The trial court below also has not addressed the question of whether Kelley was Bozeman's common-law wife at the time of his death.  But the court did characterize her as "a friend" of Bozeman.  To the extent that this label amounted to a factual determination that Kelley was not Bozeman's common-law wife, we reverse that finding, because the court was not permitted to make it at this summary-judgment stage.  *Mantachie Natural Gas Dist. v. Miss. Valley Gas Co.*, 594 So. 2d 1170, 1172 (Miss. 1992)  The question thus remains whether Kelley presented sufficient evidence in response to Clark Sand's summary-judgment motion to establish a genuine issue of material fact as to the existence of a common-law marriage between her and Bozeman.

¶23.   Under Alabama law, judicial notice or recognition of the marriage is not a prerequisite to the existence or validity of the relationship.  *See Creel v. Creel*, 763 So. 2d 943, 946 (Ala. 2000) (affirming trial court's finding that the parties had maintained a common-law marriage at the time of the husband's death in 1997).  For instance, if one party sues for divorce without ever having had a formal, ceremonial marriage, the trial court first must find that the parties had a common-law marriage before granting the divorce.  *See Blocker v. Blocker*, 885 So. 2d 796, 799 (Ala. Civ. App. 2004) (holding that, if court finds no common-law marriage existed, it must dismiss divorce action because it lacks subject-matter jurisdiction to decide

---

[7] A subsequent proceeding in Alabama regarding Kelley's and Bozeman's purported common-law marriage styled "*In Re: The Marriage of Ruby Kelley and Dave T. Bozeman, deceased*," case number DR-2008-43, currently is pending in the Circuit Court of Choctaw County, Alabama, but was stayed on April 21, 2009, pending resolution of this appeal.

divorce and property issues); *Parker v. Parker*, 897 So. 2d 356, 356 (Ala. Civ. App. 2004); *Hall v. Duster*, 727 So. 2d 834 (Ala. Civ. App. 1999).

¶24.    The elements of a common-law marriage in Alabama are: "(1) capacity; (2) present agreement or mutual consent to enter into the marriage relationship . . . ; (3) public recognition of the existence of the marriage; and (4) cohabitation or mutual assumption openly of marital duties and obligations." *Creel*, 763 So. 2d at 946 (quoting *Adams v. Boan*, 559 So. 2d 1084, 1086 (Ala. 1990)).[8]  "[W]hile no ceremony or particular words are necessary, [the requisite] elements . . . must be present, either explicitly expressed or implicitly inferred from the circumstances, in order for a common-law marriage to exist." *Boswell v. Boswell*, 497 So. 2d 479, 480 (Ala. 1986) (citing *Etheridge v. Yeager*, 465 So. 2d 378, 379-80 (Ala. 1985). *See also Swann v. Swann*, 627 So. 2d 429, 430 (Ala. Civ. App. 1993); *Waller v. Waller*, 567 So. 2d 869 (Ala. Civ. App. 1990).  The question of whether the essential elements are present, and hence whether a common-law marriage exists, is a question of fact for the jury. *Johnson v. Johnson*, 270 Ala. 587, 588, 120 So. 2d 739, 740 (1960).

¶25.    In its motions for summary judgment, Clark Sand introduced a plethora of sworn evidence and testimony indicating that Kelley and Bozeman did not maintain a common-law marriage.  Clark Sand showed, *inter alia*, that Bozeman and Kelley had never undergone a formal marriage ceremony.  Also, Bozeman disclaimed any marriage in his sworn deposition, taken in 2004.  In fact, he specifically stated during the deposition that "I don't have a wife."

---

[8] "[P]ublic assumption of marital duties and cohabitation [is] []commonly known as consummation[]." *Parks v. Martinson*, 694 So. 2d 1386, 1389 (Ala. Civ. App. 1997).

12

Both Bozeman and his attorney referred to Kelley as Bozeman's girlfriend at the deposition. Finally, Bozeman's death certificate, on which Kelley was the "informant," gave his marital status as "widowed," not "married," and the space for "surviving spouse" was left blank. So Clark Sand's summary-judgment motion was made and supported under Rule 56.

¶26. Upon Clark Sand's showing, Kelley was required, by the means available under Rule 56, to come forth with specific facts showing that there is a genuine factual question for trial regarding whether she and Bozeman did in fact have a common-law marriage. Miss. R. Civ. P. 56(e). And under *Mantachie*, "[i]ssues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." *Mantachie*, 594 So. 2d at 1172. When the *Mantachie* Court used the term "swears," it obviously means "sworn under oath." So to overcome Clark Sand's summary-judgment motion, Kelley had to come forth with sworn depositions, answers to interrogatories, admissions on file, and/or affidavits showing that there is a genuine issue of material fact as to the existence of all the elements of an Alabama common-law marriage between her and Bozeman. Miss. R. Civ. P. 56(c).

¶27. Kelley swore in her response to Clark Sand's motion for summary judgment that she and Bozeman had a common-law marriage. And she attached to her response portions of her sworn deposition testimony in which she testified that she and Bozeman had cohabitated from 2000 until his death, that they had made a pact to be husband and wife and considered themselves married, that they had held themselves out to the public as husband and wife, and that his family considered them married. Kelley also attached to her response a portion of the sworn deposition of Bill Dykes, Bozeman's friend and nephew. Dykes testified that

13

Bozeman and Kelley had lived together for six or seven years prior to his death, that Bozeman had referred to Kelley in public as his wife on many occasions, that the two of them had held themselves out to the public as husband and wife, and that "to the outside public, they were husband and wife . . . ."

¶28. Kelley's and Dykes's depositions include sworn testimony supporting the existence of all the elements of a common-law marriage in Alabama, except perhaps capacity. But we see no indication in the record before us that Clark Sand or the other defendants ever challenged Kelley's or Bozeman's mental capacity in 1999, when the relationship began, or during the subsequent years leading up to his death. So with her response and the attached exhibits, Kelley established a genuine issue of material fact regarding whether she and Bozeman maintained a common-law marriage under Alabama law at the time of his death.

¶29. This is sufficient to withstand Clark Sand's summary-judgment motion based on standing, since, if Kelley was in fact Bozeman's common-law wife, she would have been his "widow" under the wrongful-death statute, and she would have had standing as a "listed relative" to bring this wrongful-death action when she did. We thus affirm the trial court's denial of Clark Sand's motion for summary judgment, insofar as Kelley presented sufficient evidence to create a genuine and material factual dispute regarding whether she was Bozeman's common-law wife at the time of his death.

¶30. Our decision should not be read to imply that Kelley is in fact Bozeman's widow. *See Vickers v. First Miss. Nat'l Bank*, 458 So. 2d 1055, 1064-65 (Miss. 1984) ("No fact stated here should by virtue of this opinion be taken as established for purposes of trial on remand. . . . Such are for trial on the merits."). But standing is "an indispensable part of the

14

plaintiff[']s case . . . ." **Lujan**, 504 U.S. at 561. And "where the evidence is in conflict, the determination whether there existed a common-law marriage is for the trier of fact." 52 Am. Jur. 2d. *Marriage* § 112 (2010). Since Kelley has survived summary judgment, this determination will be made at trial.

¶31. Therefore, we remand this case to the trial court for trial on Kelley's wrongful-death action, during which a determination as to whether Kelley was Bozeman's common-law wife at the time of his death – and hence whether she had standing as his "widow" – must be made. Kelley will bear the burden of proving to the fact-finder all the elements of a common-law marriage according to Alabama law, which requires a jury decision on the issue. **Johnson**, 270 Ala. at 588, 120 So. 2d at 740.

> C. *Kelley may have standing as an "interested party."*

¶32. The trial court found that Kelley "certainly would be an interested party." Except to the extent that Kelley may be found to have standing as a common-law wife, as discussed above, we reverse the finding of the trial court that Kelley is an interested party.

¶33. In **Burley v. Douglas**, 26 So. 3d 1013 (Miss. 2009), we held that the grandfather of two deceased children qualified as an interested party by virtue of his status as a statutory heir under our laws of intestate descent and distribution. **Id.** at 1021-22. *See also* **Alack v. Phelps**, 230 So. 2d 789, 793 (Miss. 1970). The descent and distribution statutes enumerate as "statutory heirs," in descending order of priority, the decedent's spouse and children, the decedent's siblings and parents, and the decedent's grandparents, uncles, and aunts. Miss. Code Ann. §§ 91-1-1 to 91-1-11 (Rev. 2004). So if Kelley was Bozeman's common-law wife, she would have been his "spouse" under the decent statutes, and she would have

15

standing as an "interested party" under **Burley** to file a wrongful-death action for his death. We thus affirm the trial court's denial of summary judgment on standing, to the extent that the trier of fact determines that Kelley was Bozeman's common-law wife at the time of his death.

¶34.   But the fact-finder may determine that Kelley and Bozeman did not maintain a common-law marriage. So we must decide whether Kelley qualifies as an "interested party," independently of her purported status as Bozeman's common-law wife under the "statutory-heir" rationale of **Burley v. Douglas**.

¶35.   The wrongful-death statute simply states that the suit may be brought "by all interested parties" and that, when determining damages, the jury shall take into consideration "all damages of every kind to *any and all parties interested in the suit*." Miss. Code Ann. § 11-7-13 (Rev. 2004) (emphasis added). This language suggests that, to qualify as an interested party under the statute, a prospective claimant need only have some legally sufficient interest in the wrongful-death lawsuit. *Id.*

¶36.   Determining who has a legally sufficient interest in the suit is not a clear question. Previously, we have held that one who qualifies as a statutory heir of the deceased also qualifies as an interested party under the wrongful-death statute. *See* **Burley**, 26 So. 3d at 1021-22; **Alack**, 230 So. 2d at 793. But just because a person is not a statutory heir of the decedent does not necessarily mean that he or she is not an interested party for purposes of standing to commence a wrongful-death action.[9] We implicitly held as much in **Cleveland**

---

[9] It is logically fallacious to hold as much. It does not follow from "all heirs-at-law are interested parties" that "all persons who are not heirs-at-law are not interested parties."

16

*v. Mann*, 942 So. 2d 108 (Miss. 2006), when we stated that "[t]he parties 'interested in the suit' are not limited to the wrongful death beneficiaries, but could include the estate of the decedent, an insurance company exercising its right of subrogation, *and any other parties claiming a right of recovery*." **Id.** at 118 (emphasis added). So we must conclude that, to have a legally sufficient interest in the wrongful-death action, the claimant must be able to claim some arguable right of recovery therefrom.

¶37. It follows from **Cleveland v. Mann**, however, that to claim such a right of recovery, the claimant must have had some relationship with the decedent that is recognized by law. The estate mentioned by the **Mann** Court has such a legal relationship with the decedent, once the estate is opened, by virtue of our probate and intestate descent and distribution laws. Miss. Code Ann. §§ 91-1-1 to 91-1-31 (Rev. 2004); Miss. Code Ann. §§ 91-5-1 to 91-5-35 (Rev. 2004); Miss. Code Ann. §§ 91-7-1 to 91-7-51 (Rev. 2004). And the insurance company may have such a legally recognized relationship to the decedent by virtue of its contractual subrogation rights. *See, e.g.*, Miss. Code Ann. § 83-11-107 (Rev. 1999). Without such a legally recognized relationship to the decedent, the claimant has not suffered "an invasion of a *legally protected interest*," as **Lujan**'s "injury" prong requires. **Lujan**, 504 U.S. at 560-61. And without such an "injury," the person cannot "claim a right of recovery" from the decedent's wrongful-death action. **Mann**, 942 So. 2d at 118.[10]

_____

[10] Black's Law Dictionary thus defines "interested party" as "[a] party who has a *recognizable* stake (and therefore standing) in a matter." *Black's Law Dictionary* 917 (abr. 7th ed. 2000) (emphasis added).

17

¶38. Synthesizing the preceding statements of law, we are able to construct a workable definition of an "interested party" under the wrongful-death statute. Put simply, an interested party is a person who has a *relationship* to the decedent that is *recognized by law*, and who therefore has suffered a remediable *injury* (*i.e.*, the invasion of a legally protected interest) by the wrongful deprivation of the decedent's life at the defendant's hands. Such a person thus may claim a genuine *right of recovery* from the decedent's wrongful-death action by seeking damages for his or her injury, and that right gives the claimant a *legally sufficient interest* in the action to make him or her an "interested party" under the wrongful-death statute.[11]

¶39. Under this definition, Kelley did not qualify as an interested party under the wrongful-death statute at the time she filed suit, independent of her alleged common-law marriage to Bozeman. Until Bozeman's will was probated, Kelley's potential relationship to Bozeman as the named executrix and primary devisee in the will was not legally recognized.[12] So at the time she filed suit, the will gave her neither a right of recovery from his wrongful-death

[11] In this sense, the "interested-party" category of potential wrongful-death claimants can be thought of as a "catch-all" category of persons who are permitted by the statute to bring a wrongful-death action for the decedent's death even though they do not qualify as personal representatives or "listed relatives."

[12] There is a subtle yet critical difference between a statutory heir of the deceased and a person who is named a "devisee" in the decedent's will. A statutory heir's legal relationship to the decedent, and thus, his or her right of recovery from the decedent's wrongful-death action, is vested upon the decedent's death by the operation of our intestate descent and distribution statutes. Miss. Code Ann. §§ 91-1-1 to 91-1-31 (Rev. 2004). But as already noted, a will has no legal effect and confers no rights or authority until it is probated. *See supra* nn. 5, 6. So a devisee's relationship to the decedent is not validated, and his or her right of recovery from the wrongful-death suit is not vested, until the will is probated.

suit nor a legally sufficient interest therein, to make her an "interested party."  Kelley's later formal appointment as executrix of Bozeman's estate could not cure her lack of standing, because standing is to be determined as of the commencement of the suit.  *Pope*, 995 So. 2d at 126.  And, other than Kelley's asserted status as Bozeman's common-law wife, the record before us indicates no other relationship to Bozeman, legally speaking, to justify conferring upon her a right of recovery from his wrongful-death action or to give her a legally sufficient interest in the action.

¶40.    To the extent the trier of fact determines that Kelley was not Bozeman's common-law wife, Kelley could not have had standing as an "interested party" to file this suit when she did.

## II.    The saving statute does not apply to the instant action.

¶41.    The circuit court held that Kelley's suit was filed within the applicable statute of limitations because of the saving statute's one-year tolling effect following the dismissal of *McBride*.  The *McBride* complaint included claims for Bozeman's personal injuries and medical expenses. Bozeman was alive when *McBride* was filed.  But the *McBride* complaint was not amended after Bozeman's death to include claims for his wrongful death, and no one was substituted in *McBride* as the party in interest to pursue such claims.  So, at the time it was dismissed, the *McBride* action did not include any claim for Bozeman's wrongful death.

¶42.    An action for wrongful death includes the decedent's "survival-type" claims, such as claims for his or her personal injury, property damage, and medical and funeral expenses, and the wrongful-death claimants' so called "wrongful-death" claims, such as loss of consortium, society, and companionship.  *Caves v. Yarbrough*, 991 So. 2d 142, 148-49 (Miss. 2008).

19

Kelley's wrongful-death action includes "survival-type" claims, which are identical to Bozeman's personal-injury claims in *McBride*, and "wrongful-death" claims, which are new claims in favor of Bozeman's beneficiaries. The "survival-type" claims accrued upon Bozeman's diagnosis with silicosis on June 2, 2002, and the "wrongful-death" claims accrued upon Bozeman's death on March 11, 2005. *Id. See also Univ. of Miss. Med. Ctr. v. McGee*, 999 So. 2d 837 (Miss. 2008).

¶43.    *McBride* was dismissed without prejudice on March 10, 2006. This Court held long ago, however, that "[t]he dismissal of a suit without prejudice 'does not . . . confer any new right or advantage on the [plaintiff], and hence it will not have the effect of excepting from the period prescribed by the statute of limitations, the time during which that suit was pending.'" *W.T. Raleigh Co. v. Barnes*, 109 So. 8, 9 (Miss. 1926) (quoting *Nevitt v. Bacon*, 32 Miss. 212, 66 Am. Dec. 609 (1856)). In other words, "when a suit is dismissed without prejudice, the statute of limitations is deemed unaffected by the filing of the suit . . . ." *Ciralsky v. C.I.A.*, 355 F.3d 661, 672 (D.C. Cir. 2004) (citing *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)); *accord Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995). So, when *McBride* was dismissed without prejudice, its pendency did not serve to toll the statute of limitations on Kelley's ability to bring a wrongful-death action for Bozeman's death.

¶44.    Upon the dismissal of *McBride* "as to a matter of form," the saving statute gave Bozeman, or "his executor or administrator" in the event of his death, one year to refile his *McBride* claim as a "new action for the same cause" in an appropriate venue. Miss. Code Ann. § 15-1-69 (Rev. 2003). The "survival-type" claims included in Kelley's wrongful-death

20

action are "for the same cause" as Bozeman's *McBride* claim. Seeking to reap the benefit of the saving statute, Kelley brought the instant wrongful-death action on March 5, 2007, far outside three years of Bozeman's diagnosis. So Kelley needed the saving statute's one-year tolling effect to bring the "survival-type" claims included in her wrongful-death action, because the pendency of *McBride* did not toll the limitation period.

¶45.   But this action could not have been brought under the saving statute, because Kelley had not yet been appointed Bozeman's executrix when she filed suit, and she was not substituted as the party plaintiff in Bozeman's *McBride* claim after Bozeman died but before *McBride* was dismissed. This action must be a new and independent wrongful-death action, brought by Kelley without the saving statute and separate and distinct from Bozeman's personal-injury claim in *McBride*. If Kelley had standing to bring this wrongful-death action, she thus brought it subject only to the three-year statute of limitation applicable to this case. *See Thiroux v. Austin*, 749 So. 2d 1040, 1042 (Miss. 1999) (holding that a wrongful-death action is limited by the statute of limitation applicable to the underlying tort resulting in the wrongful death, upon which the action is predicated).

¶46.   Kelley filed this suit far more than three years after Bozeman's diagnosis, so the "survival-type" claims included in Kelley's action are time-barred. *Caves*, 991 So. 2d at 149. So we reverse the trial court's denial of summary judgment with respect to Kelley's "survival-type" claims, and we dismiss those claims as time-barred. But Kelley did bring this suit within three years of Bozeman's death, so her "wrongful-death" claims are not time-barred, if she had standing to bring them in the first place. We thus affirm the trial court's decision that Kelley's "wrongful-death" claims were timely commenced. If the fact-finder

21

concludes that Kelley was Bozeman's common-law wife at the time of his death, then Kelley had standing under the wrongful-death statute to bring this action as Bozeman's "widow" and as an "interested party," and she may proceed with her "wrongful-death" claims.

## CONCLUSION

¶47. We reverse the trial court's findings that, at the time she brought suit, Kelley was Bozeman's personal representative, his "friend" and not his wife, and an "interested party." But a genuine issue of material fact exists regarding Kelley's purported common-law marriage to Bozeman. We thus affirm the trial court's denial of Clark Sand's motion for summary judgment on standing, because Kelley *may* have had standing to bring this suit as a "listed relative" and an "interested party." We also affirm the trial court's denial of summary judgment with respect to Kelley's "wrongful-death" claims, as those claims were timely commenced. But Kelley's "survival-type" claims are time-barred, so we reverse the trial court's denial of summary judgment on those claims.

¶48. Therefore, Kelley has survived summary judgment. But the legal question of Kelley's standing under the wrongful-death statute cannot be answered until the factual dispute regarding whether she was Bozeman's common-law wife is resolved. So we remand this case to the Warren County Circuit Court with instructions to proceed with the trial of Kelley's wrongful-death action, one element of which will be a factual determination, according to Alabama law, regarding the existence of a common-law marriage between Kelley and Bozeman at the time of his death.

¶49. **AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

22

**CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY DICKINSON, P.J., AND CHANDLER, J. KING, J., NOT PARTICIPATING.**

**DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶50. The Mississippi wrongful-death statute[13] authorizes several categories of persons – including "interested parties" – to file suit. This Court has clearly held that the deceased's heirs under the laws of intestate succession qualify as "interested parties."[14] But today, the majority says a devisee under a will is not an "interested party" because (according to the majority) a "will has no legal effect and confers no rights or authority until it is probated." Because the majority is not correct on this point, I concur only in part and in result.

¶51. There is very little practical difference in the legal status of the heirs under the laws of intestate succession, and those under a will. As a general rule (subject to exceptions[15]), personal property of a decedent (with or without a will) must pass through an estate before it may be distributed.[16] More importantly, this Court has held: "Upon the death of a person

---

[13]Miss. Code Ann. § 11-7-13 (Rev. 2004).

[14]***Burley v. Douglas***, 26 So. 3d 1013 (Miss. 2009).

[15]*See e.g.* Miss. Code Ann. § 81-5-63 (Rev. 2001) (bank accounts less than $12,500); Miss. Code Ann. § 91-7-322 (Supp. 2010) (debts owed or property belonging to estates of less than $50,000); Miss. Code Ann. § 91-7-323 (Rev. 2004) (wages owed to decedent).

[16]***Long v. McKinney***, 897 So. 2d 160, 174 (Miss. 2004). Furthermore, "it has been held that heirs may recover in chancery the personalty of a decedent without an administration of the estate, provided there are no creditors." Robert A. Weems, *Wills and Administration of Estates in Mississippi* § 2:52 (2003) (citing ***Partee v. Kortrecht***, 54 Miss. 66, 71, 1876 WL 5134 (1876)). Mississippi Code Section 91-1-27 lays out the chancery

his [or her real] property vests immediately in his [or her] heirs, or the devisees or distributees under his will, if one has been made."[17] The majority's assertion that a "will has no legal effect and confers no rights or authority until it is probated" misses this important point, and thus is clearly incorrect.

¶52.    A wrongful-death lawsuit benefits an heir at law and an heir under a will exactly the same.  So there is no logical basis for treating them differently, as does the majority.  If one qualifies as an "interested party," so should the other.  I therefore respectfully dissent in part.

**KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION**.

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶53.    Because I would affirm the trial court's denial of summary judgment *in toto*, I respectfully concur in part and dissent in part.  First, I must disagree that David Bozeman's claims in the prior ***McBride*** action are barred by the statute of limitations.  Because the action brought by Ruby Kelley encompassed Bozeman's previous claims, the saving statute preserved those so-called "survival-type" claims.  I also would affirm the trial court's finding that Ruby Kelley had standing to bring this wrongful death action as the decedent's personal representative, and I would further affirm the trial court's finding that she is an interested party without regard to whether she is the decedent's widow pursuant to Alabama law.

*(1) Whether the "survival-type" claims are time-barred.*

---

procedure for recognition as an heir at law.

[17]***Beach v. State***, 178 Miss. 336, 173 So. 429, 430 (1937); *accord **In re Estate of McRight***, 766 So. 2d 48, 49 (Miss. Ct. App. 2000) ("whether by intestate death and succession or by last will and testament, a deceased's real property vests immediately at death in his heirs or devisees").

24

¶54. The majority finds that the present suit is new and independent of David Bozeman's claim in *McBride*, and therefore, the saving statute would not serve to toll the statute of limitations on these claims, despite this Court's prior announcement to the contrary in *Canadian National v. Smith*, 926 So. 2d 839 (Miss. 2006). The majority reaches this conclusion by reasoning that "Kelly had not yet been appointed Bozeman's executrix when she filed suit, and she was not substituted as the party plaintiff in Bozeman's *McBride* claim after Bozeman died but before *McBride* was dismissed." Maj. Op. at ¶ 45. This reasoning is flawed and contradicts established law.

¶55. Recently, in *Harris v. Darby*, 17 So. 3d 1076 (Miss. 2009), this Court reiterated that, because a survival claim is not extinguished at death pursuant to Mississippi Code Section 91-7-237,[18] Mississippi Rule of Civil Procedure 25(a)(1) contemplates dismissal only upon notice to the court of the party's death and only if, after death is suggested on the record, substitution is not made within ninety days.[19] There is no indication that the court in

---

[18]"When either of the parties to any personal action shall die before final judgment, the executor or administrator of such deceased party may prosecute or defend such action, and the court shall render judgment for or against the executor or administrator." Miss. Code § 91-7-237 (Rev. 2004).

[19]Mississippi Rule of Civil Procedure 25(a)(1) provides:

If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of summons. The action shall be dismissed without prejudice as to the deceased party if the motion for substitution is not made within ninety days after the death is suggested upon the record by service of a statement of the fact of the death as herein provided for the service of the motion.

25

*McBride* was provided notice of Bozeman's death prior to the dismissal as to form. Thus, the claim was not extinguished.

¶56.   In *Harris*, the plaintiff filed a claim asserting medical malpractice against the defendants, individually and on behalf of her mother. *Id.* at 1076. The mother died during the pendency of the action, and the daughter was not appointed as the executrix of her mother's estate until seventeen months after the mother's death. *Id.* at 1077. After the decedent's daughter received her appointment as executrix, she filed a Rule 25 motion to substitute. *Id.* The defendants then moved to dismiss the case, arguing that the motion to substitute was untimely because it was filed after the one-year period contemplated by the saving statute at Mississippi Code Section 15-1-69. *Id.* The trial court agreed with the defendants and dismissed the case, finding that the death of the mother triggered the saving statute. *Id.* at 1078.

¶57.   On appeal, this Court reversed, holding that, because the case had not been dismissed prior to the Rule 25 motion for substitution, the saving statute was not triggered and dismissal was not warranted. *Id.* The Court concluded:

> The savings statute was designed as remedial legislation intended to protect the good-faith efforts of plaintiffs who make a simple mistake. The statute was not designed to penalize plaintiffs and bar the continuation of an ongoing suit. *The drafters of this law surely did not intend that a suit automatically abate or be dismissed upon the death of a party.*

*Id.* at 1081 (emphasis added).

26

¶58.   *Harris* clearly applies here, and Bozeman's claims in *McBride* were not extinguished for failure to substitute the estate.  The saving statute, therefore, was not triggered until the *McBride* case was dismissed without prejudice, and those claims were properly and timely resurrected via Kelley's wrongful death action.  The fact that Kelley's claims included damages relating to Bozeman's death does not destroy the identity of this action with the prior action in *McBride*, because a wrongful death suit subsumes those claims that could have been brought under the survival statute.  *Burley v. Douglas*, 26 So. 3d 1013, 1019 n.6 (Miss. 2009) ("When the same wrongful conduct causes both personal injury and death, at the instant of death, the recovery for the personal injury is embraced by the 'one suit' for wrongful death and is not actionable by the estate under the survival statute.") (quoting *In re Estate of England*, 846 So. 2d 1060, 1068 (Miss. Ct. App. 2003)).

> *(2) Whether Ruby Kelley was the personal representative of the decedent when she filed the complaint in this action.*

¶59.   It is not disputed that the decedent named Ruby Kelley as his executrix in his will, or that she was approved as his executrix on August 7, 2007, by the Probate Court of Choctaw County, Alabama.  No one disputes that Kelley currently serves as the decedent's executrix, or that she will inherit the entire estate, save and except a pickup truck, which was bequeathed to one of the decedent's sons.  Thus, Kelley *is* the personal representative of the decedent's estate.  *Hill v. James*, 175 So. 2d 176, 179 (Miss. 1965).  Her status as such came to fruition upon the decedent's death, subject only to approval of the appropriate court, which was granted in due course.  The question, then, is whether this Court is willing to decide that a named executrix is not a decedent's personal representative within the meaning of the

27

wrongful death statute, unless and until the testator's appointment has been ratified by a court of competent jurisdiction, a question that, until now, has never been squarely addressed or answered by this Court.

¶60. The majority holds that Kelley – the decedent's chosen executrix – was not the decedent's personal representative when she filed the complaint in this action because her appointment had not been judicially blessed. To support its holding, the majority incorrectly cites *Long v. McKinney*, 897 So. 2d 160, 174 (Miss. 2004), for the proposition that there must be a formal appointment prior to a plaintiff's becoming the personal representative of an estate for litigation purposes. Maj. Op. at ¶ 17. *Long* addressed different aspects of wrongful death litigation than those now before the Court. Although the *Long* decision meticulously analyzed the issue of standing as it applies to multiple wrongful death beneficiaries, it is not dispositive of the question presented in the case at bar. While the *Long* Court observed that the estate must be opened and administered in the chancery court, it does not so much as imply that admitting the will to probate is a condition precedent to filing suit. The Court in fact stated:

> There is no general requirement under law that the personal representative obtain chancery approval to pursue the claims of the estate in the litigation. Nor is there a general requirement that counsel representing the personal representative and the estate in the litigation obtain prior chancery approval of such representation or the agreement for compensation of counsel. However, obtaining such prior approval is a widely accepted and wise practice. Such prior approval will, in most instances, avoid difficulty when the chancellor is approached for an order approving the accountings and the final distribution of estate proceeds, where such payments include compensation to counsel.

*Long*, 897 So. 2d at 174-75. Whatever may be the prudential value of obtaining a chancellor's approval with respect to the administration of the claim as an asset of the estate,

28

it should not be considered supportive of the erroneous notion that the estate does not exist until it is admitted to probate. Clearly, the *Long* case, which requires that the estate, at some point, be opened, does not require that a person be formally appointed as executor, executrix, administrator, or administratrix prior to his or her filing a complaint on behalf of the estate. *Id.* at 174-75.

¶61. Consistent with our established precedent, Ruby Kelley became David T. Bozeman's personal representative when Bozeman died and left a will in which he had named Kelley as his executrix. "An executor derives his authority from the will," and "his interest is completely vested at the testator's death." *Ricks v. Johnson*, 99 So. 142, 146 (Miss. 1924).

¶62. The majority, attempting to limit the effectiveness of Bozeman's having named Kelley as executrix, cites the statute requiring an oath and bond from the executor as premise for its conclusion that the decedent's estate does not exist until probate proceedings have begun. Maj. Op. at ¶ 19. It also cites a section regarding the effectiveness of wills as documents of title in Robert A. Weems's *Wills and Administration of Estates in Mississippi* for the same proposition. Maj. Op. at ¶ 19. These statements do not have any relevance to the question of who has standing to file suit as a personal representative of a decedent. A person has an estate of one sort or another from birth; the probate estate is the whole of a person's interest in property that is subject to administration at the time of his or her death.[20] The fundamental

---

[20]Black's Law Dictionary defines "estate" as: "1. The amount, degree, nature, and quality of a person's interest in land or other property; esp., a real-estate interest that may become possessory, the ownership being measured in terms of duration. 2. All that a person or entity owns, including both real and personal property. 3. The property that one leaves after death; the collective assets and liabilities of a dead person. 4. A tract of land, esp. one affected by an easement." *Blacks' Law Dictionary* 586-89 (8th ed. 2004). "Probate estate"

29

purpose of admitting a will to probate is so that the intent of the testator may properly be ascertained. ***Matter of Last Will and Testament of Lawson v. Lambert***, 792 So. 2d 977, 979 (Miss. 2001). It is a long-standing principle, for example, that unless the intent of the testator is otherwise, devises under a will vest immediately upon the death of the testator. ***Dailey v. Houston***, 246 Miss. 667, 680, 151 So. 2d 919, 925 (1963). The will itself is effective from the time of the death of the testator. ***Lee v. Foley***, 224 Miss. 684, 80 So. 2d 765, 767 (1955). Judicial administration of an oath to a personal representative in accordance with Mississippi Code Section 91-7-41 (Rev. 2004) does not create the office; rather, it formally binds the representative to his or her solemn duties. It is self-evident that the purpose of admitting a will to probate is not the creation of an estate, but rather its orderly administration so that the estate may ultimately be closed after its assets have been distributed. The implication of the majority's reasoning is that the property interests held by a testator at the time of death properly belong to nobody and exist, if at all, in limbo, until the will has been admitted to probate.

¶63. While it may have been preferable for Kelley to have received judicial ratification of Bozeman's testamentary appointment before filing the wrongful death action, such was not required. Her failure to jump through that procedural hoop should not deprive Bozeman's

---

is defined as "a decedent's property subject to administration by a personal representative." *Id.* at 1239.

Moreover, the Internal Revenue Code defines the decedents' gross estate as whatever property interests the decedent holds at the time of his or her death. 26 U.S.C. 2031(a) (2001).

estate or his statutory wrongful death beneficiaries of the right to pursue the claims that Kelley asserted for them.

   *(3) Whether Kelley has standing as an interested party.*

¶64.   The new rule this Court crafts in the majority opinion is that a person must have a legal relationship with the decedent, such that he or she suffers a "remedial *injury* (i.e., the invasion of a legally protected interest) by the wrongful deprivation of the decedent's life at the decedent's hands." Maj. Op. at ¶ 38 (emphasis in original).   The majority opinion then concludes that Ruby Kelley has standing as an interested party under the wrongful death statute, Mississippi Code Section 11-7-13,  only if a finder of fact determines that she is the decedent's *widow* and not his *friend*.

¶65.   Such a restrictive definition of the broadly encompassing term *interested parties* requires a high degree of judicial creativity.  Given the protracted duration and apparent closeness of the relationship between Ruby Kelley and David Bozeman that this record reveals, a great stretch of the imagination is necessary for a conclusion that Kelley would not have been interested in all things concerning the life and death of this man with whom she had spent a significant portion of her life, so much so that he had named her to act as his personal representative after his death.  Given the facts before us, even if we assume for the sake of argument that she is not the decedent's spouse, how is it possible for us to divine that she is not an interested party?

¶66.   After creating a specific list of persons it authorized to initiate wrongful death actions, the legislature moved to a much more general, catch-all category of authorized parties by providing that such actions could be filed by *interested parties*.  There is no requirement that

31

such a party even be a human being. If an insurance company with subrogation rights can qualify as an interested party with sufficient standing to bring a wrongful death suit (as the majority acknowledges), surely a person with longstanding personal ties to a decedent such as Ruby Kelley had to David Bozeman meets any ordinary and reasonable definition of *interested party,* without regard to whether she had a pecuniary interest in the outcome of the wrongful death litigation. Maj. Op. at ¶ 36 (quoting ***Cleveland v. Mann***, 942 So. 2d 108, 118 (Miss. 2006)).

¶67. By having named her as his executrix, David Bozeman died with the understanding that he had entrusted Ruby Kelley with the responsibility of handling his post-mortem affairs. Even though he had living blood relatives, Bozeman designated Ruby Kelley as his personal representative. This alone is more than sufficient to make her a party interested in seeing that a wrongful death action was timely filed on behalf of Bozeman's statutory beneficiaries, without regard to whether she ultimately would be determined to be numbered among them. She certainly should not be required to prove to a finder of fact that she and Bozeman held themselves out as husband and wife to establish her standing as an interested party.

¶68. She did file such an action in time to protect the beneficiaries' rights under the applicable Mississippi statute of limitations, without waiting for an Alabama probate court to ratify Bozeman's selection of her as his executrix (which the Alabama court eventually did). The point is, of course, that Kelley's knowledge, at the time she filed the wrongful death suit in Mississippi, that she had been chosen by Bozeman as his executrix was more than enough to have made her a very interested party. Furthermore, as Justice Dickinson correctly notes, the majority here is in error for distinguishing between an heir at law and a

devisee under a will for purposes of defining "interested parties." There is no reason for us to rule that whether she is an interested party should be left to a trier of fact.[21]

¶69. I regret the conclusion of my respected colleagues in the majority that one must have a financial stake in litigation in order to file suit on behalf of those who do. Surely our legislature, in authorizing interested parties to bring such matters into our courts, did so with the knowledge that the hope of financial gain is not the only thing that can motivate people to be interested in acting for the benefit of others.

**DICKINSON, P.J., AND CHANDLER, J., JOIN THIS OPINION IN PART.**

---

[21]I cannot agree with the majority's holding that the question of whether Ruby Kelley has standing should be made by a jury upon remand for trial. Questions of justiciability, such as standing, are threshold issues of law that are within the purview of the judge, not the jury. *See e.g.,* ***Bennett v. Board of Supervisors of Pearl River County***, 987 So. 2d 984, 986 (Miss. 2008) (holding that standing is a question of law) (citing ***DuPree v. Carroll***, 967 So. 2d 27, 28 (Miss. 2007)).