CARLSON, PRESIDING Justice, for the Court.
¶ 1. Henry Morgan, Sr., filed a personal-injury suit against eighty-eight defendants, claiming injuries related to silicosis. Morgan, Sr., died while the personal-injury case was pending, and the case eventually was dismissed. More than three years after Morgan, Sr.’s death, his son, Henry Morgan, Jr., filed a wrongful-death suit individually and on behalf of all wrongful-death beneficiaries of Morgan, Sr. The defendants filed a motion for summary judgment based on the running of the statute of limitations. The trial court denied the motion. Because the wrongful-death suit was filed more than three years after the death of Morgan, Sr., the statute of limitations bars any wrongful-death and survival claims. Accordingly, we reverse the trial court’s judgment and render judgment in favor of the defendants.
FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 2. Henry Morgan, Sr., was diagnosed with silicosis on June 2, 2002. On September 9, 2002, Morgan, Sr., along with 141 other plaintiffs, filed a personal-injury suit against eighty-eight defendants in the Circuit Court for the Second Judicial District of Jones County, claiming silica-related injuries. The case was styled: Ellzey R. Arthur, et al. v. Pulmosan Safety Equip., et al, No.2002-227-CV9. Morgan, Sr., died five days later, on September 14, 2002. Despite Morgan, Sr.’s death, no suggestion of death was ever filed, nor was any amendment asserting a survival or wrongful-death action ever sought. As the trial court in the instant case stated in its order denying the defendants’ motions for summary judgment, “both plaintiffs and defendants in the multi-plaintiff Jones County action treated that case as if Henry Morgan, Sr.[,] had not died.... ”
¶ 3. More than a year later, on December 8, 2003, the defendants in Arthur filed a notice of removal to federal court. The case eventually was transferred to a multi-district litigation court in Texas. A little less than two years later, on September 30, 2005, Arthur was remanded back to state court. On May 23, 2006, all Arthur plaintiffs were dismissed based on this Court’s holding in Canadian National v. Smith, 926 So.2d 839, 845 (Miss.2006). This Court has summarized Smith as holding that:
all claims previously filed en masse for silicosis damages that were not filed in the proper venue should be severed as misjoined pursuant to Janssen Pharmaceutica v. Armond, 866 So.2d 1092 (Miss.2004), which requires each claim joined in a single lawsuit to arise from a “distinct, litigable event.” Smith, 926 So.2d at 845 (citing Armond, 866 So.2d at 1099). The Smith Court stated that such a dismissal would be “[as to] a matter of form,” for purposes of the savings statute, Mississippi Code Section 15-1-69. Smith, 926 So.2d at 845.
Clark Sand Co., Inc. v. Kelly, 60 So.3d 149, 153 (Miss.2011). The dismissal in Arthur was styled: “Agreed Order of Dismissal Without Prejudice.” No attempt was made to substitute the wrongful-death beneficiaries of Morgan, Sr., as real parties in interest in Arthur.
¶ 4. On May 23, 2007, exactly one year after Arthur was dismissed, Henry Morgan, Jr., filed a wrongful-death claim against thirty-two defendants in the Circuit Court of Adams County, claiming that Morgan, Sr.’s silica-related injuries had caused his death. Morgan, Jr., filed the wrongful-death complaint individually and on behalf of all wrongful-death beneficiaries of Morgan, Sr. Morgan, Jr.’s complaint did not provide Morgan, Sr.’s social security number, address, or other identi *458 fying information; nor did it mention either the date that he discovered his injury or the date of his death. At the hearing on the motion for summary judgment, defense counsel asserted that, until the plaintiffs had responded to discovery requests, the defendants had not been aware of the deceased’s identity. Indeed, the attorney for defendant Pangborn Corporation stated at the hearing that “[tjhere are 501 Henry Morgans in the social security death index. We had ten Henry Morgans just in our data base alone, four of which have confirmed social security numbers different from the decedent.”
¶ 5. On November 4, 2009, the defendants filed a motion for summary judgment, claiming that the statute of limitations for the wrongful-death suit had run on September 14, 2005, three years after Morgan, Sr.’s death. On January 21, 2010, the trial court entered an order denying the defendants’ motion for summary judgment, essentially finding that the one-year savings statute allowed for Morgan, Jr., to file the wrongful-death suit one year after the dismissal of Morgan, Sr.’s personal-injury suit. See Miss.Code Ann. § 15 — 1— 69 (Rev.2003). The defendants then filed a petition for an interlocutory appeal with this Court, which was granted.
DISCUSSION
¶ 6. This Court reviews a trial court’s grant or denial of summary judgment under a de novo standard. Clark Sand Co., 60 So.3d at 154 (citing Monsanto v. Hall, 912 So.2d 134,136 (Miss.2005)).
¶ 7. The defendants present one issue on appeal: Whether Henry Morgan, Jr.’s wrongful-death suit is barred by the statute of limitations. In response to the defendants’ argument, Morgan, Jr., contends that the defendants waived the statute-of-limitations defense.
I. Whether the defendants waived the statute-of-limitations defense.
¶ 8. Morgan, Jr., claims that the defendants waived the statute-of-limitations defense because they waited more than two years before pursuing them defense that the statute of limitations applied, and because they substantially participated in the litigation prior to asserting the defense. The defendants respond by claiming that, because Morgan, Jr., did not file a cross-appeal on this issue, he is precluded from raising it in his appellate brief. In the alternative, they argue that the defense was not waived. In its order denying the defendants’ motion for summary judgment, the trial court specifically held that the defendants had not waived the statute-of-limitations defense.
¶ 9. In MS Credit Center, Inc. v. Horton, 926 So.2d 167, 179-81 (Miss.2006), this Court held that the defendants waived their right to compel arbitration when they delayed in pursuing this right for eight months and substantially participated in the litigation. Although the facts of Horton related to waiver of the right to compel arbitration, this Court held that Horton’s waiver rule applied to all affirmative defenses:
Our holding today is not limited to assertion of the right to compel arbitration. A defendant’s failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver.
Id. at 180. Horton also held that prejudice to the party resisting the motion is a factor to be considered. Id. at n. 7 (citations omitted).
*459 ¶ 10. The defendants in Horton asserted their right to compel arbitration in their answers. Id. at 180. But, instead of filing a motion to compel arbitration, the defendants engaged in litigation by consenting to a scheduling order, engaging in written discovery, and conducting Horton’s deposition. Id. This Court found that these actions, coupled with the eight-month period between the defendants’ answer and their motion to compel arbitration, constituted a waiver. Id. at 181.
¶ 11. This Court has applied Horton to a statute-of-limitations defense in two recent opinions: Spann v. Diaz, 987 So.2d 443, 446 (Miss.2008); and Jones v. Fluor Daniel Services Corporation, 32 So.3d 417, 420 (Miss.2010). In Spann, this Court found that the defendant did not waive his statute-of-limitations defense when he waited seventy-one days between answering an amended complaint and filing a motion for summary judgment, because the delay “did not constitute a substantial and unreasonable delay.” Spann, 987 So.2d at 448.
¶ 12. This Court also found that the statute-of-limitations defense was not waived in Jones. Jones, 32 So.3d at 420-21. The defendant in Jones stated that the plaintiffs’ claim “may be barred by statutes of limitations” in its original answer. Id. at 420. Early in the suit, the trial court granted summary judgment in favor of the defendants, finding that the plaintiffs had not sufficiently established their intentional-infliction-of-emotional-distress claim. Id. at 419. The plaintiffs appealed the trial court’s judgment, and this Court reversed and remanded the case. Id; see also Jones v. Fluor Daniel Servs. Corp., 959 So.2d 1044, 1050 (Miss.2007). Upon remand, the defendants again moved for summary judgment, arguing this time that the statute of limitations had run on the intentional-infliction-of-emotional-distress claim. Id. at 419. Although the litigation had lasted more than three years, when the trial judge granted the defendant’s motion for summary judgment, the trial judge specifically stated that the defendant had not waived the statute-of-limitations defense. Id. This Court affirmed the trial court, stating that “It cannot be said that the trial court abused the discretion given to it by this Court in Horton by ruling [that] the defendant had not waived the statute of limitations defense — particularly in light of [the] plaintiffs’ failure to state their claim clearly.” Id. at 421.
¶ 13. In today’s case, the wrongful-death complaint was filed on May 23, 2007. All of the defendants asserted the statute of limitations as an affirmative defense in their answers, which they filed separately. In every one of these answers, the affirmative defense of the statute of limitations appears in a boilerplate form alleging none of the specifics of this case. After the defendants first raised the statute of limitations as a defense in their answers, they waited more than two years before filing their motion for summary judgment based on the statute of limitations. However, it must be recalled that, since the initial complaint did not specifically identify the deceased and discovery had not yet been answered by the plaintiff, according to the defendants, they were unaware of Morgan, Sr.’s identity or of the date that the relevant statutes of limitations began to run. The motion for summary judgment was filed on November 4, 2009. The two-year delay in today’s case was lengthy. Thus, the relevant inquiry is whether the defendants substantially participated in the litigation and whether Morgan, Jr., was prejudiced by this delay.
¶ 14. In addition to the defendants’ answers, the record contains the following actions which occurred prior to the defen *460 dants’ filing their motion for summary judgment: a notice for service of discovery with the defendants’ interrogatories and request for production of documents; an agreed discovery order; a motion to compel the plaintiff to respond to the discovery served; a notice of hearing on the motion to compel; and a letter from the defendants’ attorneys to the plaintiffs’ attorneys requesting supplementation of discovery responses. The only actions the parties had taken prior to the filing of the motion for summary judgment essentially related to early stages of discovery. The defendants in Horton participated in the litigation by consenting to a scheduling order, engaging in written discovery, and conducting Horton’s deposition. Horton, 926 So.2d at 180. The level of participation in the litigation displayed by the defendants in the instant case and the defendants in Horton might therefore be characterized as similar on these facts alone. However, the different context of these cases must be taken into account.
¶ 15. Discussing Horton, in a specially concurring opinion joined by a six-member majority of this Court, we have held that “the defendant generally must timely raise all affirmative defenses, but if the defense is one which would terminate the litigation, the defendant must also timely pursue the enforcement of the defense.” Meadows v. Blake, 36 So.3d 1225, 1234 (Miss.2010) (Waller, C.J., specially concurring). However, “these requirements presuppose that the defendant knows or should know that the defense would (not could) terminate the case.” Meadows, 36 So.3d at 1234 (Waller, C.J., specially concurring) (emphasis in original). Here, the defendants assert they were unaware of Morgan, Sr.’s identity, his date of death, and other relevant information until Morgan, Jr., had complied with discovery. Indeed, the trial judge in today’s case found that the defendants had not waived their affirmative defenses, including the statute-of-limitations issue. This case is easily distinguishable from the arbitration provision at issue in Horton, since the defendants in Horton knew, or should have known, early in the proceedings, about the existence of the contract with Horton containing the arbitration provision.
¶ 16. In today’s case, the only actions taken by the defendants were actions related to early discovery. No depositions had been taken, the case had not been set for trial, and the only hearing related to the summary-judgment motion. Importantly, we must consider the actions taken in context. This case was derived from a mass-tort case (Ellzey) involving hundreds of defendants, that was still in its early stages. The requirements for meeting the substantial participation test in a suit like that at issue here will be far greater than those in a suit similar to the one described in Horton.
¶ 17. Furthermore, in Kinsey v. Pang-bom, 78 So.3d 301, 307 (Miss.2011), we analyzed a factually similar situation deriving from the same mass tort litigation in Texas and found no substantial participation. In that case, the initial complaint was insufficient to decipher the relationship between the original plaintiff and survival-claims plaintiff. Id. The only significant delay was caused by Kinsey, the survival plaintiff, failing to provide timely responses to discovery. Id. When Kinsey finally responded to discovery, the defendants pursued the affirmative defense of the statute of limitations forthwith. Id. This Court concluded that the defendants had not substantially participated in the lawsuit, and that the defendants had not waived them statute of limitations defense. Id. at 308.
¶ 18. In the instant case, the only significant delay was Morgan, Jr.’s delay in *461 responding to written discovery. Responses to this discovery were necessary for the defendants to determine the nature of their defense. As discussed above, Morgan, Jr.’s discovery responses provided the defendants, for the first time, with such vital basic information as Morgan, Sr.’s social security number and address, allowing the defendants to determine Morgan, Sr.’s identity. Nor did the complaint allege the date of Morgan, Sr.’s discovery of his injury or the date of his death, making it impossible for the defendants to calculate whether the statute of limitations had run until Morgan, Jr., had complied with discovery. In addition to this basic information, discovery was very broad, containing fifty-eight interrogatories and seventy-two requests for production. After Morgan, Jr., finally responded to discovery on October 2, 2009, the defendants filed their Motion for Summary Judgment on November 7, 2009.
¶ 19. Significantly, from the questions and comments posed by the trial judge at the hearing, it was obvious that he was very familiar with the record in this case, including the procedural history. After the trial judge heard counsels’ arguments on the motion for summary judgment, he commenced his bench ruling as follows:
Okay. All right. First of all, the Court specifically finds that there’s been no waiver by the defendants of an affirmative defense in this matter. That’s one of the positions argued by the plaintiffs. I want to make that clear at the outset.
The record before us supports the trial judge’s ruling on this issue.
¶ 20. Also, Morgan, Jr., has failed to show that he was prejudiced by the defendants’ delay. Morgan, Jr., asserts in his brief that the delay in today’s case is inherently prejudicial and claims that the defendants have “flooded” him with procedural motions to remove the case to federal court and sever the case. These motions, however, relate to Morgan, Sr.’s personal-injury case, not Morgan, Jr.’s wrongful-death case.
¶ 21. In response to Morgan, Jr.’s argument that the defendants waived the statute-of-limitations defense, the defendants contend in their reply brief that Morgan, Jr., must file a cross-appeal for this issue. This Court’s precedent does not support this contention. See Dunn v. Dunn, 853 So.2d 1150, 1152 (Miss.2003) (holding that “an appellee should not be required to file a cross-appeal unless he or she is aggrieved by the trial court’s judgment”); see also Presley v. City of Senatobia, 997 So.2d 235, 238 (Miss.Ct.App.2008) (citing Dunn, 853 So.2d at 1152) (“[Cjross-appeal is neither required nor expedient where its only purpose is to urge alternative grounds for affirmance.”).
¶ 22. Although the time between the complaint and the defendants’ motion for summary judgment was lengthy, we find that the defendants did not waive the defense, because they did not substantially participate in the litigation, and Morgan, Jr., was not prejudiced by the delay.
II. Whether Morgan, Jr.’s wrongful-death action is barred by the statute of limitations.
¶ 23. In their initial brief, the defendants present one issue: “Is this wrongful-death action barred by the statute of limitations?”

A. The Statute of Limitations in Wrongful-Death Cases

¶ 24. Mississippi Code Section 11-7-13 (Rev.2004) governs wrongful-death actions. This Court has held that Section 11-7-13 “encompasses all claims — including survival claims which could have been brought by the decedent, wrongful-death *462 claims, estate claims, and other claims— resulting from a tort which proximately caused a death.” Caves v. Yarbrough, 991 So.2d 142, 150 (Miss.2008); see also Clark Sand Co., 60 So.3d at 161 (“[a]n action for wrongful death includes the decedent’s ‘survival-type’ claims, such as claims for his ... medical and funeral expenses, and the wrongful-death claimants’ so called ‘wrongful-death’ claims, such as loss of consortium, society, and companionship ....”) (citation omitted). Generally, wrongful-death actions are predicated on an underlying tort, and the action is limited by the statute of limitations which is applicable to that tort. Caves, 991 So.2d at 148 (citing Jenkins v. Pensacola Health Trust, 933 So.2d 923, 926 (Miss.2006)). In today’s case, the three-year limitations period in Mississippi Code Section 15-1-49 (Rev.2003) applies. The various claims that may be brought in a wrongful-death case all are subject to them own statutes of limitations. Caves, 991 So.2d at 150 (“where death is not an immediate result of the tort, the limitation periods for the various kinds of claims may not begin to run at the same time.”). For example, the statute of limitations for “survival-type” claims that may have been brought by the decedent begins to run when the decedent could have pursued a claim. Id. at 148. The statute of limitations for other “wrongful-death” claims, such as loss of consortium, will not begin to run until death. Id. at 149.
¶ 25. In today’s case, Morgan, Jr., asserted “survival-type” and “wrongful-death” claims in his complaint. The limitations period for the survival claims began to run on the date of Morgan, Sr.’s diagnosis — June 2, 2002. In the absence of any tolling, the statute of limitations for these “survival-type” claims expired on June 2, 2005. Also, without considering any tolling, the statute of limitations for other “wrongful-death” claims expired on September 14, 2005 — three years after Morgan, Sr.’s death. Morgan, Jr.’s wrongful-death complaint was not filed until May 23, 2007. Thus if there are no applicable tolling periods, Morgan, Jr.’s wrongful-death action will be time-barred.

B. The statute of limitations for the wrongful-death claim was not tolled by the personal-injury claim or the savings statute.

¶ 26. This Court recently has addressed whether the filing of a personal-injury suit will toll the statute of limitations for a later-filed wrongful-death suit arising from the same facts. In Clark Sand, the decedent, David Bozeman, and fifty-four other plaintiffs filed a personal-injury suit against silica manufacturers and distributors {McBride suit) on September 23, 2002. Clark Sand, 60 So.3d at 152. The McBride complaint included claims for the plaintiffs’ personal injuries, but also included wrongful-death claims on behalf of wrongful-death beneficiaries. Id. On March 11, 2005, Bozeman died while McBride was pending. Id. After Boze-man’s death, there was no attempt to amend the complaint in Bozeman’s McBride claim or to substitute a wrongful-death beneficiary as the real party in interest. Id. at 153. On March 10, 2006, McBride was dismissed without prejudice pursuant to Canadian National, 926 So.2d at 845. Id.
¶ 27. On March 5, 2007, Ruby Kelley,[1] Bozeman’s live-in girlfriend and purported *463 common-law wife, filed a wrongful-death action as executrix of Bozeman’s estate and on behalf of Bozeman’s wrongful-death beneficiaries. Id. In the wrongful-death complaint, Kelley contended that the wrongful-death suit was simply a continuation of Bozeman’s personal-injury suit in McBride. Id. As such, Kelley averred that the savings statute allowed her to bring the wrongful-death action within one year of the McBride dismissal. Id. See also Miss.Code Ann. § 15-1-69 (Rev.2003). The defendants filed two motions for summary judgment, arguing both times that Kelley’s claim was time-barred by the three-year statute of limitations and that the savings statute did not apply, because Kelley’s wrongful-death action was distinct from Bozeman’s personal-injury action. Clark Sand, 60 So.3d at 153-54. The trial court denied the defendants’ motions, finding that Kelley’s suit was filed within the statute of limitations because the savings statute resulted in a one-year tolling period from the McBride dismissal. Id. at 154.
¶ 28. On appeal, Clark Sand presented the following issue: “Does the provision in Mississippi’s saving statute allowing one year to refile apply to a second suit which differs from the original in both the identity of parties and the identity of claims?” Id. This Court found that the savings statute did not apply to Kelley’s wrongful-death suit, because Kelley had not been appointed as Bozeman’s executrix when she filed the wrongful-death suit, and she had not been substituted as a party plaintiff while the McBride suit was still pending. Id. at 162. Accordingly, this Court found that Kelley’s action “must be a new and independent wrongful-death action, brought by Kelley without the saving statute and separate and distinct from Boze-man’s personal-injury claim in McBride.” Id. at 162. Because Kelley’s claims were considered “separate and distinct” from Bozeman’s personal-injury suit, this Court found that the “survival-type” claims in Kelley’s complaint were time-barred because Kelley’s complaint was filed more than three years after Bozeman’s diagnosis. Id. As to Kelley’s “wrongful-death” claims, this Court found that they were not time-barred, because Kelley had filed her complaint within three years of Bozeman’s death. Id.
¶ 29. Kinsey is also factually analogous to the instant case. Kinsey, 78 So.3d at 302-03. In Kinsey, the decedent, Ted Watkins, was diagnosed with silicosis on October 4, 2002. Id. at 302. On December 26, 2002, Watkins and several other plaintiffs filed a personal-injury suit against various silica producers and distributors (Spencer case). Id. at 302-3. Watkins died on July 28, 2003. Id. at 303. No attempt was made to file a suggestion of death or to substitute Kinsey, the executrix of Watkins’s estate, as a real party in interest in Spencer. Id. at 303. Spencer was dismissed as to some defendants on January 30, 3006. Id. at 303-04. The remaining Spencer defendants were dismissed on April 27, 2006. Id. at 304. On April 27, 2007, Kinsey filed a wrongful-death action on behalf of Watkins’s wrongful-death beneficiaries. Id. at 304. Kinsey addressed both “survival-type” claims and “wrongful-death” claims. Id. at 306. Kinsey states:
The “survival-type” claims accrued upon Watkins’s diagnosis with silicosis on October 4, 2002. Any “wrongful-death” claims accrued, at the latest, on the date of Watkins’s death on July 28, 2003. See Clark Sand, 60 So.3d at 161; Caves, 991 So.2d at 148. Therefore, in the absence of tolling, the statute of limitations for “survival-type” claims ran on October 4, 2005 (and for “wrongful-death” claims, on July 28, 2006).
*464 Id. at 307. Kinsey concludes by citing Clark Sand and finding that Kinsey’s wrongful-death suit is a “new and independent wrongful-death action” and is barred by the statute of limitations. Id. at 308.
¶ 30. Based on Clark Sand and Kinsey, we hold that Morgan, Jr.’s wrongful-death action is time-barred. Clark Sand held that subsequently-filed, wrongful-death actions are “separate and distinct” from previously filed, personal-injury actions. Id. at 162. Like the plaintiff in Clark Sand, Morgan, Jr., had not been appointed executor of Morgan, Sr.’s estate prior to filing the wrongful-death action, nor had Morgan, Jr., been substituted as a party plaintiff in Morgan, Sr.’s Arthur suit. Because the savings statute does not apply and the two actions are “separate and distinct,” the statute of limitations was not tolled and began to run for “wrongful-death” type claims on the day of Morgan, Sr.’s death— September 14, 2002. Morgan, Jr.’s wrongful-death claim should have been filed by September 14, 2005 — three years after Morgan Sr.’s death. The statute of limitations for “survival-type” claims began to run on June 2, 2002 — the date of Morgan, Sr.’s diagnosis — and expired on June 2, 2005. Morgan, Jr.’s survival claims were not filed until May 23, 2007, and are barred by the three-year statute of limitations.
¶ 31. No attempt was made to file a notice of death to amend the Arthur complaint to include Morgan, Jr.’s wrongful-death claims, or to substitute Morgan, Jr., as the real party in interest in Arthur. More than four and one half years after Morgan, Sr., died, Morgan, Jr., filed this wrongful-death suit. According to Clark Sand, Morgan, Jr.’s action is “separate and distinct” from Morgan, Sr.’s action. Because they are distinct actions, Morgan Sr.’s personal-injury action did not toll the statute of limitations for Morgan, Jr.’s wrongful-death action. Also, the savings statute does not apply, because the claims are separate. Accordingly, Morgan, Jr.’s wrongful-death action is barred by the statute of limitations.
CONCLUSION
¶ 32. Morgan, Jr.’s wrongful-death action is time-barred. Accordingly, we reverse the Adams County Circuit Court’s judgment denying summary judgment and render judgment here in favor of the defendants.
¶ 33. REVERSED AND RENDERED.
WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND KING, JJ.

. Ruby Kelly was also known as Ruby Kelley. The official Southern Reporter citation appears as “Clark Sand Co., Inc. v. Kelly." But throughout the body of the opinion in Clark Sand, the plaintiff is referred to as Kelley and not Kelly. Thus, in our discussion, we will refer to her as Kelley.