# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01771-COA

**CULPEPPER ENTERPRISES INC., KATHY**　　　　　　**APPELLANTS**
**CULPEPPER, AND BRANNON WHITE**

**v.**

**JOSEPH R. PARKER AND CHERI C. CLANCY**　　　　　**APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/14/2016 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | S. WAYNE EASTERLING |
| ATTORNEYS FOR APPELLEES: | CORY NATHAN FERRAEZ |
| | SAMUEL STEVEN MCHARD |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND RENDERED IN PART; REMANDED IN PART - 08/07/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., CARLTON, WILSON, AND GREENLEE, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.　This appeal arises out of a breach of contract action for unpaid salaries. On June 22, 2016, Joseph R. Parker and Cheri C. Clancy filed a complaint against their former employer, Culpepper Enterprises Inc. alleging breach of oral contract for unpaid wages;[1] negligent and intentional infliction of emotional distress; and their need for emergency, declaratory and injunctive relief. The complaint named Culpepper Enterprises' chief executive officer, Kathy

---

[1] In their complaint, Parker and Clancy use "salary" and "unpaid wages" interchangeably to describe their claims. We note that Parker and Clancy never asserted they were paid by the hour or worked certain hours per week. Therefore, we refer to their claims as those for unpaid salaries.

Culpepper, and chief operating officer, Brannon White, as individual defendants.

¶2.    In their first amended complaint filed July 6, 2016, Parker and Clancy alleged that the Culpepper defendants[2] failed to compensate them for numerous pay periods "beginning in the middle of 2015." They also added a claim for damages under the Fair Labor Standards Act (FLSA). The Culpepper defendants filed their answer on July 21, 2016, raising the one-year statute of limitations found in Mississippi Code Annotated section 15-1-29 (Rev. 2015)[3] as an affirmative defense.

¶3.    On August 30, 2016, Parker and Clancy filed a second amended complaint without the trial court's leave, seeking unpaid salaries for 2013, 2014, and 2015. They filed a third amended complaint without leave of court on September 1, 2016, alleging damages for quantum meruit, breach of implied contract, and unjust enrichment. On September 6, 2016, the Culpepper defendants filed a motion to strike the second and third amended complaints. The Culpepper defendants also filed a motion to dismiss any claim for unpaid damages that accrued before June 22, 2015, based on the one-year statute of limitations. The court struck the second and third amended complaints, and ruled that Parker and Clancy's proof would be limited to damages accruing after June 22, 2015. The court found that due to this ruling,

---

[2] Culpepper, Kathy, and White are collectively referred to as "the Culpepper defendants" unless stated otherwise. We refer to the business entity as "Culpepper Enterprises" to provide clarification when necessary.

[3] Section 15-1-29 states in pertinent part that "an action based on an unwritten contract of employment shall be commenced within one (1) year next after the cause of such action accrued, and not after."

2

the Culpepper defendants' motion to dismiss any claim before June 22, 2015 was moot.

¶4.     Despite the Culpepper defendants' motion for a continuance, the trial was held September 6, 2016. Following trial, the jury awarded Parker and Clancy unpaid salaries in the respective amounts of $48,000 and $40,960, against Culpepper Enterprises, which were consistent with Parker and Clancy's exhibits showing the total unpaid salaries. The jury also awarded Parker and Clancy $25,000 each for emotional distress and mental anguish against all three defendants.

¶5.     On appeal, the Culpepper defendants argue (1) the trial court erred in denying its motion for a directed verdict because Parker's and Clancy's oral contracts for employment violate the statute of frauds, and the one-year statute of limitations precludes recovery for damages prior to June 22, 2015; (2) the trial court erred in denying its motion for a continuance; (3) the trial court erroneously allowed testimony concerning damages prior to June 22, 2015; (4) there is insufficient evidence to support an award of damages for emotional distress; and (5) the evidence failed to create a jury question as to Kathy and White's liability.

### FACTS AND PROCEDURAL HISTORY

¶6.     Culpepper Enterprises was formed in 1988 by William Culpepper (Kathy's husband and White's stepfather). Following William's death in 2007, Kathy became Culpepper Enterprises' chief executive officer. White became Culpepper Enterprises' chief operating officer in September 2015, after he stopped working as a private contractor for the federal

3

government and moved to Collins, Mississippi.

¶7. From 1989 to 2012, Culpepper Enterprises maintained two lines of business. Its primary line involved fulfilling Mississippi Department of Transportation (MDOT) contracts to mow grass along interstate right-of-ways. Its secondary line, discontinued in 2012, involved mowing along pipeline and power lines. The Culpepper defendants contend that when their sole focus became mowing grass for the MDOT, its business activities became strictly seasonal. The Culpepper defendants claim that as a result, they informed Parker and Clancy that during winter months, they would be paid only when additional work became available.

¶8. Parker and Clancy quit working for Culpepper Enterprises on June 17, 2016.

**Complaints**

¶9. On June 22, 2016, Parker and Clancy filed a complaint in the Jones County Circuit Court, alleging that "beginning in the middle of 2015," the Culpepper defendants failed to compensate them for numerous pay periods pursuant to their oral employment contracts. The complaint alleged that Parker and Clancy entered into oral contracts with Culpepper Enterprises, whereby Parker was to receive an annual salary of $52,000 with $200 per diem each week, and Clancy was to receive an annual salary of $66,560 with $200 per diem each week. Parker sought $42,000 in unpaid salary, and Clancy sought $53,160. They also sought damages for emotional distress, attorney's fees, and a temporary restraining order and temporary injunction requiring the MDOT to withhold all funds it owed Culpepper

4

Enterprises.

¶10. On June 29, 2016, the Jones County Circuit Court issued a temporary restraining order requiring that the MDOT withhold $100,000 in funds owed to Culpepper. The court later vacated the temporary restraining order and transferred Parker and Clancy's case to the Covington County Circuit Court.

¶11. On July 6, 2016, Parker and Clancy filed an amended complaint for damages and injunctive relief that additionally alleged FLSA violations. The amended complaint restated that the Culpepper defendants began failing to pay salaries "in the middle of 2015." On July 21, 2016, the Culpepper defendants filed their answer, pleading the one-year statute of limitations and the statute of frauds, and denying that FLSA applied to the case.

¶12. On August 30, 2016, Parker and Clancy filed a second amended complaint without leave of court, seeking unpaid salaries for 2013, 2014, and 2015. Parker increased his demand for unpaid salary to $94,000, and Clancy increased hers to $145,706. On September 6, 2016, Parker and Clancy filed a third amended complaint without leave of court, seeking damages based on quantum merit, breach of implied contract, and unjust enrichment. In response, the Culpepper defendants filed a motion to strike Parker and Clancy's second and third amended complaints, and a motion dismiss any evidence of unpaid salaries barred by the one-year statute of limitations.

¶13. On September 6, 2016, at a motion hearing immediately before trial, the trial judge struck Parker and Clancy's second and third amended complaints, and ruled that pursuant to

5

the one-year statute of limitations, Parker and Clancy's proof would be limited to damages that accrued after June 22, 2015, one year before they filed the original complaint. The court overruled as moot the Culpepper defendants' motion to dismiss based on the one-year statute of limitations.

**Motion for Continuance**

¶14.    Eight days before trial, on August 29, 2016, Kathy filed a motion for a continuance asserting that she was medically unable to participate in the trial due to a stroke. Her motion was accompanied by an unsworn certificate from a Merit Health medical director, stating that Kathy was admitted to Merit's Senior Care Unit on August 12, 2016, and was discharged on August 21, 2016, with recommended outpatient mental-health services. The medical director recommended that Kathy be given at least ninety days to "more fully recuperate from her recent hospitalization." Kathy's motion also requested a continuance on the grounds that Parker and Clancy had not responded to outstanding discovery, and had yet to be deposed because they cancelled their depositions.

¶15.    On the morning of trial, September 6, 2016, the trial judge heard arguments on the motion for a continuance. Although the Culpepper defendants' written motion contended that there was outstanding discovery, the Culpepper defendants did not address this issue during the hearing. The trial court denied the motion for continuance, noting that the medical director's recommendation did not explain why Kathy was hospitalized, provide a diagnosis or prognosis for Kathy's condition, or state whether Kathy's ability to testify had been

6

affected.

**Trial**

¶16. During trial, White testified that when Culpepper Enterprises discontinued its secondary line of business in 2012 and chose to focus on mowing grass for the MDOT, its business activities became strictly seasonal. White claimed that, as a result, Parker and Clancy were informed that during winter months they would be paid only when additional work became available. He stated that during cold-weather months, Parker and Clancy were accordingly paid when authorized to do additional work, such as servicing tractors.

¶17. Kathy testified as an adverse witness that she performed Culpepper Enterprises' payroll duties during 2014 and 2015, and that she timely paid all of their salaries. Kathy further stated that she properly submitted all of Parker and Clancy's withheld taxes, Social Security, and Medicare. She denied entering into oral employment contracts with Parker and Clancy for annual salaries.

¶18. Clancy testified that in 2008, she orally agreed with Culpepper Enterprises to receive an annual salary of $66,560, with either a one- or two-week pay period. She stated that she and Parker were never told that their pay would be altered in any way. Clancy testified that she worked year-round, including winter months. Clancy testified that sometime in 2015, Culpepper Enterprises failed to pay her and Parker for salaries they were owed, and that Kathy responded she would "take care of it." Clancy said at a later date during that year—sometime during late November or early December—she and Parker sat down with

7

Kathy and asked for the salaries they had yet to receive. Clancy stated that she agreed to wait until January to be paid. She testified that for pay periods when she actually received checks, the checks did not list the correct pay-period dates. Instead, Kathy would hand her a check, and say, "I'm going to give you two checks for the next three or four weeks." Clancy further testified that upon going to the Social Security Administration office, she learned that no funds had been paid into her social security account during 2014 and 2015.

¶19.    Parker testified that he started working at Culpepper Enterprises in the spring of 1991. He stated that in 2009, he and Culpepper Enterprises orally agreed that he would receive an annual salary of $51,000 and would be paid every two weeks. Parker asserted that his 2009 agreement with Culpepper Enterprises had never changed. He said that despite several conversations with Kathy and White, Culpepper Enterprises failed to pay him his agreed upon salary during 2014 and 2015.

¶20.    Nell Hopkins testified that she worked as Culpepper Enterprises' bookkeeper and payroll clerk from September 2007 to December 2013. Hopkins said that she personally witnessed Parker and Clancy work year-round, even during winter months, and that she was never instructed to alter Parker's or Clancy's pay in any way. She testified that while working for Culpepper Enterprises, she observed Kathy ask Parker and Clancy not to cash their paychecks until Culpepper Enterprises had enough funds to cover the checks. Hopkins stated that on occasion, Kathy held Parker's and Clancy's paychecks until she chose to sign them. Hopkins further testified that although Culpepper Enterprises withheld taxes and Medicare

from Parker's and Clancy's paychecks, Kathy instructed her not to submit the withholdings to the government. Additionally, Hopkins testified that Culpepper Enterprises continued to withhold life-insurance payments from Parker's and Clancy's checks after their insurance was cancelled in 2012. Hopkins said Kathy received life-insurance reimbursement checks but never gave them to Parker or Clancy.

¶21.    Lisa Boykin, an accountant, testified as an expert for Parker and Clancy. She stated that prior to trial, she reviewed Parker's and Clancy's 2010–2015 W-2 statements, paycheck stubs, personal bank statements, 2015–2016 pay summaries, and July 2016 Social Security Administration Statements. She further stated that the documents she reviewed included: 2010–2016 banks statements relating to Parker's and Clancy's payrolls, 2010–2016 debit transactions of paychecks cleared for payment to Parker and Clancy, employee paycheck stubs, and operating expenses for transactions dated 2015–2016. In exhibits admitted into evidence as P15 and P16, Boykin opined that Parker's 2014–2016 gross missing payroll amounted to $48,000, and Clancy's equaled $40,960. Boykin's opinions as to Parker's gross-missing payroll, admitted as Parker and Clancy's exhibit P15, are as follows:

**2014**

| | |
|---|---|
| 1/25/14 to 2/07/14 | $   2,000 |
| 2/08/14 to 2/14/14 | $   2,000 |
| 7/19/14 to 8/01/14 | $   2,000 |
| **2014 TOTAL OWED** | **$   6,000** |

**2015**

| | |
|---|---|
| 1/10/15 to 1/23/15 | $   2,000 |
| 1/24/15 to 2/06/15 | $   2,000 |
| 2/07/15 to 2/20/15 | $   2,000 |

9

| | | |
|---|---|---|
| 2/21/15 to 2/20/15 | $ | 2,000 |
| 3/07/15 to 3/20/15 | $ | 2,000 |
| 3/21/15 to 4/03/15 | $ | 2,000 |
| 4/04/15 to 4/17/15 | $ | 2,000 |
| 7/25/15 to 8/07/15 | $ | 2,000 |
| 8/08/15 to 8/21/15 | $ | 2,000 |
| 8/22/15 to 9/04/15 | $ | 2,000 |
| 9/05/15 to 9/18/15 | $ | 2,000 |
| 9/19/15 to 10/02/15 | $ | 2,000 |
| 10/03/15 to 10/16/15 | $ | 2,000 |
| 10/17/15 to 10/30/15 | $ | 2,000 |
| **2015 TOTAL OWED** | **$** | **28,000** |

**2016**

| | | |
|---|---|---|
| 2/06/16 to 2/19/16 | $ | 2,000 |
| 2/20/16 to 3/04/16 | $ | 2,000 |
| 3/05/16 to 3/18/16 | $ | 2,000 |
| 3/19/16 to 4/01/16 | $ | 2,000 |
| 4/02/16 to 4/08/16 | $ | 2,000 |
| 6/04/16 to 6/17/16 | $ | 2,000 |
| 6/18/16 to 6/24/16 | $ | 2,000 |
| **2016 TOTAL OWED** | **$** | **14,000** |

**PARKER PAYROLL**

| | | |
|---|---|---|
| 2014 TOTAL OWED | $ | 6,000 |
| 2015 TOTAL OWED | $ | 28,000 |
| 2016 TOTAL OWED | $ | 14,000 |
| **OWED TO PARKER** | **$** | **48,000** |

Boykin's opinions for Clancy's unpaid salary were admitted as plaintiffs' exhibit P16 and

showed the following:

**2014**

| | | |
|---|---|---|
| 1/25/14 to 2/07/14 | $ | 2,560 |
| 2/08/14 to 2/14/14 | $ | 2,560 |
| 7/19/14 to 8/01/14 | $ | 2,560 |
| **2014 TOTAL OWED** | **$** | **7,680** |

10

**2015**

| | |
|---|---|
| 12/27/15 to 1/09/15 | $ 2,560 |
| 1/10/15 to 01/23/15 | $ 2,560 |
| 1/24/15 to 02/06/15 | $ 2,560 |
| 2/07/15 to 02/20/15 | $ 2,560 |
| 2/21/15 to 03/06/15 | $ 2,560 |
| 3/07/15 to 03/20/15 | $ 2,560 |
| **2015 TOTAL OWED** | **$ 15,360** |

**2016**

| | |
|---|---|
| 3/19/16 to 4/01/16 | $ 2,560 |
| 4/02/16 to 4/15/16 | $ 2,560 |
| 4/16/16 to 4/29/16 | $ 2,560 |
| 4/30/16 to 5/13/16 | $ 2,560 |
| 5/14/16 to 5/27/16 | $ 2,560 |
| 5/28/16 to 6/10/16 | $ 2,560 |
| 6/11/16 to 6/24/16 | $ 2,560 |
| **2016 TOTAL OWED** | **$ 17,920** |
| **Total Payroll Owed** | **$ 40,960** |

¶22. The Culpepper defendants objected to Boykin's testimony and exhibits as contrary to the court's pretrial ruling that Parker and Clancy's evidence would be limited to damages accruing after June 22, 2015. In addition, the Culpepper defendants objected on the ground that the one-year statute of limitations barred damages accruing before then. The court overruled the Culpepper defendants' objections and ruled that the jury would decide which damages to award.

¶23. Following trial, the jury awarded Parker and Clancy $48,000 and $40,960, respectively, in unpaid salaries against Culpepper Enterprises, and $25,000 each for emotional distress against all three defendants. The Culpepper defendants timely appeal, arguing the trial court erred by: denying their motion for directed verdict; denying their

motion for a continuance; admitting testimony concerning damages that occurred prior to June 22, 2016; awarding Parker and Clancy damages for emotional distress; and denying their motion for a directed verdict in favor of Kathy and White.

## DISCUSSION

### I. Denial of Culpepper's Motion for a Directed Verdict

¶24. The Culpepper defendants argue the trial court erred by failing to grant their motion for a directed verdict because Parker's and Clancy's oral contracts do not survive the statute of frauds as verbal agreements intended to be carried out over a period of time in excess of fifteen months. The Culpepper defendants also argue, as they asserted throughout the proceedings and trial, that the one-year statute of limitations found in section 15-1-29 bars recovery for any breach prior to June 22, 2015.

¶25. "Motions for directed verdict and judgments notwithstanding the verdict challenge the legal sufficiency of the evidence." *Estate of Gibson ex. Rel. Gibson v. Magnolia Healthcare Inc.*, 91 So. 3d 616, 622 (¶11) (Miss. 2012). On appeal, we review the sufficiency of the evidence on the last occasion it was challenged in the trial court. *Dampeer v. State*, 989 So. 2d 462, 463 (¶6) (Miss. Ct. App. 2008). Therefore, because the Culpepper defendants moved for a judgment notwithstanding the verdict (JNOV) following the jury's verdict, we will assume that they are challenging the denial of their JNOV.

¶26. We review a trial court's denial of a JNOV de novo. *Mine Safety Appliance Co. v. Holmes*, 171 So. 3d 442, 446 (¶8) (Miss. 2015). Likewise, we review statutes of limitation

12

de novo. *Am. Optical Corp. v. Estate of Rankin*, 227 So. 3d 1062, 1067 (¶19) (Miss. 2017).

In reviewing the denial of a JNOV,

> This Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference[s] that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

*Blake v. Clein*, 903 So. 2d 710, 731 (¶61) (Miss. 2005).

### A.    Statute of Frauds

¶27.    Mississippi's statute of frauds provides that oral contracts "not to be performed" within fifteen months are unenforceable. Miss. Code Ann. § 15-3-1(d) (Rev. 2012). "The phrase 'not to be performed' contains negative words, and, accordingly, to bring a particular contract within the statute, there must be a negation of the right to perform [the contract] within fifteen months." *U.S. Fin. Co. v. Barber*, 247 Miss. 800, 810, 157 So. 2d 394, 397 (1963). Generally, employment contracts of indefinite duration do not fall within the statute of frauds, since either party may terminate the contract at any time. *Id.* at 810, 157 So. 2d at 397. Thus, "[t]he possibility of performance within . . . fifteen months takes the contract out of the operation of the statute." *Id.* at 810, 157 So. 2d at 397. Here, Parker's and Clancy's contracts were for indefinite periods, and were terminable at any time upon giving reasonable notice. Thus, Parker's and Clancy's contracts do not fall within the statute of frauds.

### B. Statute of Limitations

¶28. Section 15-1-29 provides in pertinent part: "[A]n action based on an unwritten contract of employment shall be commenced within one (1) year next after the cause of such action accrued, and not after." In a breach of contract claim, the cause of action accrues at the time of the breach. *Young v. S. Farm Bureau Life Ins. Co.*, 592 So. 2d 103, 107 (Miss. 1991).

¶29. In this case, Parker and Clancy contend that the Culpepper defendants failed to pay their salaries for pay periods in 2014, 2015, and 2016. However, because Parker's and Clancy's claims are based on unwritten employment contracts, the one-year statute of limitations limits recovery to breaches occurring after one year before the filing of the lawsuit. Parker and Clancy filed their complaint on June 22, 2016; therefore, their recovery must be limited to breaches occurring after June 22, 2015. We concur with precedent that the statute of limitations applies to bar recovery for unpaid salaries before June 22, 2015. However, Parker and Clancy argue that the one-year statute of limitations was tolled by: (1) fraudulent concealment; (2) willful violation of the FLSA; (3) equitable estoppel; and (4) the Culpepper defendants' promises to pay.

¶30. We note that Parker and Clancy did not file a cross-appeal. Generally, we will not consider "points of error" raised by an appellee who fails to cross-appeal. *Bd. of Trs. v. Knox*, 688 So. 2d 778, 782 n.1 (Miss. 1997); *Brock v. Hankins Lumber Co.*, 786 So. 2d 1064, 1068 (¶18) (Miss. Ct. App. 2000). However, this Court has previously held that "an appellee

14

should not be required to file a cross-appeal unless he or she is aggrieved by the trial court's judgment." *Dunn v. Dunn*, 853 So. 2d 1150, 1152 (¶8) (Miss. 2003). The trial court's judgment awarded Parker and Clancy damages beyond the one-year recovery period allowed by the statute of limitations; thus, there was no reason for Parker and Clancy to challenge this decision. *Presley v. Senatobia*, 997 So. 2d 235, 238 (¶8) (Miss. Ct. App. 2008) ("[C]ross appeal is neither required nor expedient where its only purpose is to urge alternative grounds for affirmance."). Therefore, we examine Parker and Clancy's position that the statute of limitations does not apply. *Empire Abrasive Equip. Corp. v. Morgan*, 87 So. 3d 455, 461 (¶21) (Miss. 2012) (determining appellee was not required to cross-appeal in order to claim appellants waived a statute of limitations defense).

### 1. Fraudulent Concealment

¶31. Parker and Clancy claim the Culpepper defendants fraudulently concealed nonpayment of their salaries. We note that they did not argue fraudulent concealment at trial.[4] Mississippi Code Annotated section 15-1-67 (Rev. 2012) provides that:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

To establish fraudulent concealment, there must be "some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim." *Trustmark Nat'l*

___

[4] At trial, Parker and Clancy argued concealment in the context of equitable estoppel.

*Bank v. Meador*, 81 So. 3d 1112, 1119 (¶17) (Miss. 2012). A plaintiff is required to "show that (1) some affirmative act of conduct was done and prevented discovery of the claim; and (2) due diligence was performed on its part to discover the claim." *Id.* (citing *Sanderson Farms Inc. v. Ballard*, 917 So. 2d 783, 790 (¶33) (Miss. 2005)). In addition, the Mississippi Supreme Court has held that fraudulent concealment "must be pled with specificity and particularity under [Mississippi Rule of Civil Procedure] 9(b)." *State Indus. Inc. v. Hodges*, 919 So. 2d 943, 946 (¶6) (Miss. 2006). Parker and Clancy did not show they were unaware that they had not been paid. Nor did they plead fraudulent concealment with specificity and particularity. Their claim of fraudulent concealment to toll the statute of limitations is without merit.

### 2.    FLSA

¶32.    Parker and Clancy argue the FLSA preempts the one-year statute of limitations. In doing so, they attempt to use the FLSA to toll the statute of limitations, although they did not prove the FLSA's applicability at trial.[5] The time for filing a claim under the FLSA is within two years after the cause of action accrued, or for willful violations, within three years after the cause of action accrued. 29 U.S.C. § 255(a) (2012). "The determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question." *Atkins v. Old River Supply Inc.*, 150 So. 3d 976, 979 (¶8) (Miss. Ct. App. 2012) (quoting *Walton v.*

---

[5] The trial court ruled that Parker's and Clancy's FLSA claims did not apply, and their FLSA claims were not submitted to the jury.

16

*Greenbrier Ford Inc.*, 370 F.3d 446, 450 (4th Cir. 2004)).

¶33.　The FLSA provides for a private cause of action against an employer who violates the act's minimum-wage and overtime provisions. *See* 29 U.S.C. § 216(b) (2012) ("Any employer who violates the provisions of section 206 [minimum wage provision] or section 207 [overtime pay provision] of this title shall be liable to the employee or employees affected in the amount of their *unpaid minimum wages*, or their unpaid overtime compensation . . . .") (emphasis added). Here, Parker and Clancy do not argue about unpaid minimum wages or unpaid overtime compensation; rather, they assert they were not paid the full amount of their annual salaries. We therefore find Parker's and Clancy's claims do not fall under the FLSA's coverage. *Timm v. Advanced Eng'g Sols Inc.*, 2014 WL 12649850, No. A-12-CV-227, at *7 (W.D. Tex. March 3, 2014) ("[T]he FLSA does not provide a cause of action for unpaid wages, but rather only for failure to pay an employee overtime pay or the legal minimum wage . . . ."); *Pioch v. IBEX Eng'g Servs. Inc.*, 825 F.3d 1264, 1271 (11th Cir. 2016) ("The FLSA . . . is not a vehicle for litigating breach of contract disputes between employers and employees."); *Coffen v. Washington Convention & Sports Auth.*, 271 F. Supp. 3d 211, 214 (D.D.C. 2017) (collecting cases). Accordingly, the FLSA statute of limitations does not apply.

### 3.　Equitable Estoppel

¶34.　Parker and Clancy argue that the Culpepper defendants are equitably estopped from arguing the statute of limitations applies, asserting that over the course of 2014, 2015, and

17

2016, the Culpepper defendants fraudulently concealed withheld salaries and other monies owed.[6]

¶35.    For equitable estoppel to toll the statute of limitations,

> the plaintiff must show by a preponderance of the evidence that (1) it was induced by the conduct of the defendant not to file its complaint sooner, (2) resulting in its claim being barred by the applicable limitations, and (3) the defendant knew or had reason to know that such consequences would follow.

*Townes v. Rusty Ellis Builder Inc.*, 98 So. 3d 1046, 1055 (¶26) (Miss. 2012). "Inequitable or fraudulent conduct must be established to apply the doctrine of equitable estoppel to a statute of limitations." *Ray v. Keith*, 859 So. 2d 995, 997 (¶8) (Miss. 2003). "Equitable estoppel is an extraordinary remedy that should be used with caution." *Simmons Housing Inc. v. Shelton*, 36 So. 3d 1283, 1287 (¶15) (Miss. 2010).

¶36.    As discussed already, Parker and Clancy failed to show that the Culpepper defendants concealed nonpayment of their salaries. Further, Parker and Clancy presented no evidence that the Culpepper defendants induced them not to pursue a cause of action. We find that equitable estoppel does not toll the one-year statute of limitations.

#### 4.    Promises to Pay

¶37.    Parker and Clancy contend that the limitations period was tolled because in 2015 Kathy and White made several specific promises to pay any salaries withheld from them during that year.

---

[6] We note the trial court rejected Parker and Clancy's jury instruction on equitable estoppel.

¶38. During trial, Clancy testified that she and Parker approached Kathy on several occasions in 2015 to ask about being paid for contracts they completed. Clancy said Kathy would say, "I'm going to do it if you will just give me a little more time" or "I'll take care of it." Clancy could not recall when Kathy made these promises. Clancy testified that during August or September 2015, she and White discussed her and Parker's unpaid salaries, and White told her he would see that Kathy paid them. Clancy testified that in November or December 2015, she requested payment from Kathy, and Kathy asked if she could wait until January 2016 to be paid. Clancy responded that she could wait.

¶39. The Mississippi Supreme Court "has uniformly held that, in order to remove the bar of the statute, the acknowledgment of the debt and the promise to pay must be definite and unequivocal." *U.S. Fid. & Guar. Co. v. Krebs*, 190 So. 2d 857, 861 (Miss. 1966) (quoting *Philp v. Hicks*, 112 Miss. 581, 589, 73 So. 610, 612 (1916)). Per Mississippi Code Annotated section 15-1-73 (Rev. 2012), the acknowledgment or promise must be in a writing signed by the party to be charged. Further, the acknowledgment or promise must identify the debt and acknowledge or promise to pay a definite amount. *Taylor v. Desoto Lumber Co.*, 147 Miss. 829, 102 So. 260, 261 (1924). However, "the debt itself need not be identified if it is evidenced by a written instrument from which the remaining amount to be paid can be ascertained by calculation." *U.S. Fid. & Guar. Co.*, 190 So. 2d at 861.

¶40. Parker and Clancy contend that the salaries Culpepper Enterprises owes them can be calculated by a written instrument. However, pursuant to section 15-1-73, a promise to pay

19

will only toll the statute of limitations if it is in writing. *See Harrison Enters. Inc. v. Trilogy Commc'ns Inc.*, 818 So. 2d 1088, 1092-96 (¶¶12-29) (Miss. 2002). Kathy's and White's promises were not in writing. Nor were they definite and unequivocal. Kathy and White never promised to pay a definite amount and did not specify the pay periods for which they were promising to pay. We therefore find that Kathy's and White's promises do not toll the statute of limitations.

### C. Limitation on the Jury Verdict

¶41. The jury awarded Parker and Clancy unpaid gross salaries in the respective amounts of $48,000 and $40,960, virtually adopting Parker's and Clancy's total missing payroll amounts for 2014–2016, found in exhibits P15 and P16. The exhibits provided for gross salaries without a deduction for any withholdings such as for taxes or insurance. Because we find that the one-year statute of limitations applies to this case, we find the jury's award of damages accruing prior to June 22, 2015 to be error. In applying the one-year statute of limitations to the figures adopted by the jury from P15 and P16, it is apparent that Culpepper Enterprises owed Parker $28,000 and Clancy $17,920 for unpaid salaries that accrued after June 22, 2015. Accordingly, we affirm the jury's verdict to the extent that it awarded Parker and Clancy unpaid gross salaries for breaches occurring after June 22, 2015, and reverse and render the remaining amount of the jury's award for unpaid salaries.

## II. Denial of Culpepper's Motion for a Continuance

¶42. Prior to trial, the Culpepper defendants requested a continuance, asserting that (1)

Kathy was medically unable to participate in trial as scheduled because she was recuperating from a stroke, and (2) Parker and Clancy had yet to respond to outstanding discovery. The motion was supported by a sworn affidavit from the Culpepper defendants' attorney and an unsworn certificate from a Merit Health medical director, recommending that trial be extended at least ninety days to allow Kathy "to more fully recuperate from her recent hospitalization." The medical director stated that Kathy was hospitalized from August 12 to 21, 2016. She was discharged with recommended outpatient mental-health services.

¶43. During a hearing on the motion, the trial court noted that the medical director's recommendation did not explain why Kathy was hospitalized and neither provided a diagnosis or prognosis for Kathy's condition. Additionally, the trial court noted that the medical director failed to state whether Kathy's ability to testify was affected. The trial court denied the continuance and proceeded immediately with trial. We note that the Culpepper defendants did not mention any outstanding discovery issues during the hearing.

¶44. "It is well settled that the decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be reversed unless the decision results in manifest injustice." *In re E.G.*, 191 So. 3d 763, 772 (¶37) (Miss. Ct. App. 2016) (internal quotation mark omitted). "[T]here is no mechanical test for determining whether a continuance should be granted, and the circumstances of each case must be carefully examined, especially the reasons presented to the trial judge at the time the request is denied." *Harveston v. State*, 742 So. 2d 1163, 1169 (¶21) (Miss. Ct. App. 1999).

21

¶45.     Looking to the denial of the motion for continuance, we cannot find an abuse of discretion. The Culpepper defendants offered no proof that Kathy was unable to testify or that her ability to testify was impaired. We note that Kathy testified during trial as an adverse witness for Parker and Clancy, but that she did not testify in her own case-in-chief. The Culpepper defendants contend that after testifying as an adverse witness, Kathy was unable to testify again because she was too weak. Yet the Culpepper defendants did not move to continue the trial asserting that Kathy could not be called in their case-in-chief because she was too weak too testify, and did not offer any evidence of Kathy's inability to testify on its motion for a new trial. Under these circumstances, we find no manifest injustice occurred. We cannot find that the trial court abused its discretion in refusing to grant the continuance.

### III.     Admission of Testimony Concerning Damages

¶46.     In this assignment of error, the Culpepper defendants contend the trial court erroneously allowed Boykin to testify about damages that occurred before June 22, 2015. The Culpepper defendants point out that Parker and Clancy did not allege damages prior to mid-2015 in their complaint or amended complaint. The Culpepper defendants also note that they were denied the opportunity to cross-examine Parker and Clancy on salaries withheld prior to June 2015. Citing *Lee v. Stewart*, 724 So. 2d 1093 (Miss. Ct. App. 1998), the Culpepper defendants argue the trial court erroneously allowed expert testimony pertaining to issues not contained in the pleadings.

¶47.     "The standard of review regarding the admission or exclusion of evidence is abuse of

discretion." *Benchmark Health Care Ctr. Inc. v. Cain*, 912 So. 2d 175, 179 (¶7) (Miss. Ct. App. 2005). This court will not reverse the trial court's decision regarding the admission or exclusion of evidence unless the error adversely affects a substantial right of a party. *Id.* (citing *Harrison v. McMillan*, 828 So. 2d 756, 765 (¶27) (Miss. 2002)).

¶48. The Culpepper defendants correctly argue that evidence pertaining to issues not contained in the pleadings generally may not be presented at trial. "Where a party offers proof on an issue not pleaded . . . her opponent upon timely and proper objection may of right demand that the evidence be excluded." *Queen v. Queen*, 551 So. 2d 197, 200 (Miss. 1989). The Culpepper defendants timely objected to the testimony and therefore had a right to have Boykin's testimony on damages prior to mid-2015 excluded. However, this issue is moot due to our earlier discussion and ruling that the one-year statute of limitations applies. We therefore decline to review it further.

### IV. Emotional Distress

¶49. The Culpepper defendants also assert there was insufficient proof to support an instruction or award of damages for emotional distress.

¶50. When a claim for emotional distress is based on a contract, "a plaintiff must show that (1) the emotional distress was a foreseeable consequence of the particular breach-of-contract and (2) that he or she actually suffered emotional distress; plaintiffs need not prove any physical manifestation." *Swartzfager v. Saul*, 213 So. 3d 55, 67 (¶38) (Miss. 2017). "However, the plaintiff must show specific suffering during a specific time frame;

23

generalizations are not sufficient." *Id.*

¶51.　In this case, Parker and Clancy failed to present sufficient proof of injury to present a jury issue. The only evidence presented by Parker supporting his claim for emotional distress was the following on direct examination:

> Q　And, Mr. Parker, would you please tell the jury and the Court how you have been affected by Culpepper's failure to pay your wages and reimbursements?
>
> A　Well, I'm getting buried by bills right now from the doctors. You know, it's a load. I don't know, this cancer business I got, it's just constant bills. It's not cheap to stay alive, you know. This cancer is killing me, literally, you know.
>
> Q　And . . . in 2014 and [2015] and now [2016] . . . that they failed to pay you, how has that affected you during that time period?
>
> A　A lot.

¶52.　Clancy's proof for her claim of emotional distress included her testimony that Culpepper's failure to pay was "very confusing," and as a result, she experienced "a roller coaster of emotions." Clancy stated that she went "through bouts of depression," and had been "emotional with her family." She also testified that her claim for emotional distress stemmed from the stress and emotional toll she experienced.

¶53.　In *Strickland v. Rossini*, 589 So. 2d 1268, 1275-76 (Miss. 1991), the Mississippi Supreme Court held that evidence a plaintiff was "very depressed . . . [and] very upset over all this and emotional . . . [and] not able to sleep," was insufficient to recover damages for emotional distress. Similarly, the supreme court found insufficient proof of injury to support

24

a claim of emotional distress in *Morrison v. Means*, 680 So. 2d 803 (Miss. 1996), where a plaintiff testified that the defendant's conduct "affected [him] emotionally in that [he] [was] not . . . able to sleep many nights because [he] felt like [he] [had] been done wrong . . . [and] cheated out of money that [he] need[ed] to help support [his] family." *Id.* at 807.

¶54. Under our prevailing case law, we find that Parker's and Clancy's testimonies were insufficient to support an instruction or award of damages for emotional distress. We therefore reverse and render the jury's award of damages for emotional distress.

## V.     Denial of Culpepper's Motion for Directed Verdict as to Kathy and White

¶55. In their motion for a directed verdict, the Culpepper defendants contended that because Kathy and White were acting as agents for Culpepper Enterprises, the evidence failed to create a jury issue as to their individual liability for breach of contract.

¶56. "It is a longstanding [tenet] of agency law that an agent who discloses its principal cannot be held liable for the contract entered into with the principal." *Chevis v. Miss. Farm Bureau Mut. Ins. Co.*, 76 So. 3d 187, 195 (¶28) (Miss. Ct. App. 2011); *Fireman's Fund Ins. Co. v. Chartis Ins. Agency Inc.*, 2013 WL 1305602, No. 3:12-CV-657, at *2 (S.D. Miss. 2013); *Hughes v. United Auto. Ins. Co.*, 2010 WL 2670858, No. 5:09-CV-168, at *3 (S.D. Miss. 2010). Although an agent enters into a contract on behalf of the principal, the agent does not become a party to the contract and is not responsible for its breach. *Johnson v. Rimes*, 890 F. Supp. 2d 743, 745 (S.D. Miss. 2012).

¶57. The evidence shows that Parker's and Clancy's contracts were with Culpepper

25

Enterprises. Therefore, considering the evidence in the light most favorable to Parker and Clancy, reasonable jurors could not have arrived at a verdict that resulted in individual liability on the part of Kathy or White. We note that the jury's verdict on breach of contract was against only Culpepper Enterprises, but the trial court's judgment awarded joint and several damages against Culpepper Enterprises, Kathy, and White.[7] The trial court erred in denying the Culpepper defendants' motion for JNOV regarding Kathy and White's individual liability because they were only agents of Culpepper Enterprises. Further, the trial court should not have rendered a judgment against all three defendants when the jury's verdict on breach of contract was only against Culpepper Enterprises. Consequently, Kathy and White bear no responsibility for any portion of the judgment and should be dismissed with prejudice from this suit. *See Estate of Gibson*, 91 So. 3d at 624 (¶49).

**CONCLUSION**

¶58.     In summary, we find the trial court erred when it denied the Culpepper defendants' motion for a directed verdict and JNOV because the jury verdict contained damages for unpaid salaries outside the one-year statute of limitations. We find no manifest injustice resulted from the trial court's denial of the Culpepper defendants' motion for a continuance. We reverse and render any damages awarded for emotional distress, and reverse and render the judgment of the circuit court awarding any damages against Kathy and White

---

[7] The trial court's judgment awarded a "verdict in favor of the Plaintiffs against the Defendants Culpepper Enterprises, Inc., Kathy Culpepper, and Brannon White jointly and severally in the amount of $138,960."

26

individually. We reverse and remand for the circuit court to enter a judgment for Parker and Clancy against only Culpepper Enterprises, in the amount of $28,000 for Parker and $17,920 for Clancy.

¶59. **REVERSED AND RENDERED IN PART; REMANDED IN PART.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J.**

**TINDELL, J., CONCURRING IN PART AND IN RESULT:**

¶60. While I concur in result with the majority's opinion, I feel compelled to write separately regarding the trial court's denial of Culpepper's motion for a continuance. Less than ninety days after Parker and Clancy filed their complaint, the trial court held a trial. During this time period, Parker and Clancy filed two additional amended complaints, the trial court transferred venue, and the parties apparently failed to complete discovery. Furthermore, less than a month before the trial, Kathy suffered a stroke and was hospitalized for nine days. Had this Court not been able to render what I believe to be the correct conclusion, it is my opinion this case would have been ripe for reversal based solely upon the denial of Culpepper's motion for a continuance. I seek not to discourage trial courts from managing their own dockets, particularly when it comes to pushing matters to trial. After all, justice delayed is all too often justice denied. However, unless an apparent reason exists for fast-tracking a case, I would caution trial courts to at least allow the discovery period set

27

forth in Rule 4.03(A) of the Uniform Civil Rules of Circuit and County Court to be completed before proceeding to trial.

**WESTBROOKS, J., JOINS THIS OPINION.**